Kenneth Lee CRADY and Frank Odell Gaines, Appellants,

v.

William CRANFILL, Sheriff and Jailer of Jefferson County, Kentucky, Appellee.

Court of Appeals of Kentucky.

Sept. 17, 1963.

Rehearing Denied Nov. 15, 1963.

Daniel B. Boone, Boone & Triplett, Louisville, for appellants.

John B. Breckinridge, Atty. Gen., Joe Nagle, Asst. Atty. Gen., Cecil Davenport, Laurence E. Higgins, E. P. Sawyer, Louisville, for appellee.

PALMORE, Judge.

This is a habeas corpus proceeding in which Kenneth Lee Crady and Frank Odell Gaines appeal from a judgment of the Jefferson Circuit Court denying their application for discharge from custody. KRS 419.-130.

In 1956 appellants were convicted on felony charges in South Carolina and sentenced to terms of 14 years in the penitentiary of that state. In 1960 they were placed on parole and, being residents of Kentucky, were transferred to the supervisory control of the probation and parole authorities of this state pursuant to the Uniform Act for Out-of-State Parole Supervision. See KRS 439.560. In July of 1962 they were convicted in Georgia on charges of illegal possession of burglars' tools and were fined $1,000 each and sentenced to confinement in the penitentiary. However, the sentences of imprisonment were suspended on payment of the fines.

Having learned of the Georgia conviction, on August 10, 1962, the administrative director for the South Carolina Probation, Parole and Pardon Board issued and sent to Mr. James Wells, Director of Probation and Parole for this state, warrants requesting the arrest of appellants in order that they might be brought before the South Carolina parole board to show cause why their paroles should not be revoked.[1] For some reason not fully disclosed by the record Wells did not at once cause appellants to be taken into custody, but permitted them to remain at liberty. Meanwhile, the Kentucky State Police had become interested in the matter, learned that appellants were or would shortly be in Nashville, Tennessee, and notified police authorities there of the existence of the South Carolina warrants. On the basis of this information Tennessee officers arrested appellants on September 11, 1962, as fugitives from justice,[2] and the South Carolina parole department was advised accordingly. Evidently one or more long distance telephone conversations between the Tennessee police and South Carolina parole personnel ensued, but the record contains no satisfactory proof of what was said and by whom. At any rate, on September 14, 1962, a federal marshal arrived at Nashville with a warrant or warrants for the arrest of appellants on felony charges growing out of a recent bank robbery in Louisville, Kentucky, and they were released (without their consent) by the Tennessee police to the marshal, who thereupon delivered them to the Jefferson County Jail in Louisville, under jurisdiction of the United States District Court for the Western District of Kentucky. Immediately thereafter the South Carolina warrants were lodged as detainers with the Sheriff of Jefferson County.[3]

Appellants were promptly tried and convicted in the U. S. District Court and sentenced to penitentiary terms of 5 years each. They appealed these convictions, and on

---

1. The authority for and regularity of these warrants are not questioned in this proceeding.

2. No question is raised as to the legality of the arrests.

3. Who is jailer also, per Const. § 105 and KRS 71.110.

November 27, 1962, the District Court ordered their admission to bail pending appeal in the amounts of $10,000 each. They were unable, however, to obtain sureties until June 25 or 27, 1963, seven months later, at which time they met the requirements of the federal bail order but were then detained by the Sheriff pursuant to the South Carolina warrants (supplemented by a warrant subsequently issued by the Probation and Parole Division of this state), thereby precipitating this habeas corpus proceeding.

The crux of the case on the merits is the contention by appellants that their status immediately following the arrests at Nashville was that of convicted prisoners in the custody of the Tennessee police as agents for the South Carolina parole authorities, and that when they were turned over involuntarily to the federal marshal the jurisdiction and right of South Carolina to enforce completion of their 1956 prison terms was waived or forfeited under the doctrine of Jones v. Rayborn, Ky., 346 S.W.2d 743 (1961), Davis v. Harris, Ky., 355 S.W.2d 147 (1962) and Thomas v. Schumaker, Ky., 360 S.W.2d 215 (1962). If this theory is valid, then the South Carolina arrest warrants are not effective authority for further detention of the appellants by the Sheriff of Jefferson County.

In order to determine whether the facts of this case require the same result reached in the Jones, Davis and Thomas cases, it is necessary to seek out and define more precisely the fundamental basis of the waiver theory.

When a prisoner of one state is transferred without reservation, and without his consent, to another state in order that he may be subjected to confinement in the latter, there is some reason to say that upon his release in the second state he is not a "fugitive from justice" and thus can-

not properly be extradited. Quite possibly the waiver principle originated in that theory. Cf. 35 C.J.S. Extradition § 21, pp. 448–449; Davis v. Rhyne, 181 Kan. 443, 312 P.2d 626, 629 (1957).[4] In any event, considering the traditional definition of "waiver" as a unilateral and intentional relinquishment of a known right,[5] it is apparent that as a description of the process by which a state may inadvertently lose its right over a prisoner because he has been unfairly handled by its officers, the term is a misnomer. Actually, the process is more in the nature of a forfeiture, judicially invoked to secure fair treatment of the prisoner by the state. In People ex rel. Barrett v. Bartley, 383 Ill. 437, 50 N.E.2d 517, 147 A.L.R. 935, 940, it was said that "a prisoner cannot be handed from one jurisdiction to another for the purpose of trial, conviction and service of a new sentence, before being returned to the asylum State for service of the unexpired sentence, without violating his constitutional rights."[6] Again, our Jones opinion mentions in passing both the 14th Amendment of the U. S. Constitution and § 2 of the Kentucky Constitution, but it does not categorically place the decision of the case on either. On further reflection we have concluded that the question is not one of constitutional rights, but of state policy. If it were otherwise, for example, that portion[7] of the Uniform Criminal Extradition Act providing that in no case shall the surrender of a prisoner be construed as a complete relinquishment of jurisdiction by the asylum state, but the prisoner shall be returned after trial in the demanding state *"or the completion of sentence therein, as the case may be,"* (emphasis ours) probably would be unconstitutional. Yet it seems to be universally recognized. "The question of priority of jurisdiction is one of comity between the respective sovereignties and not one of personal right of the prisoner." Davis v.

4. In which it is said that "this is not the rule of the great weight of authority."

5. Black's Law Dictionary (4th ed.), p. 1751.

6. Just what constitutional rights the Illinois court had in mind are not specified.

7. KRS 440.330.

Rhyne, 181 Kan. 443, 312 P.2d 626, 631 (1957).

■ Our Jones, Davis and Thomas opinions do not hold that the executive branch of this state does not have or may not be given the power to do what was done in those cases. The import of what they have to say is that it could not be done in the absence of some administrative regulation or statutory provision establishing procedural safeguards, which we deem necessary to the assurance of uniform and substantial justice in this particular jurisdiction. But as between this state and the State of South Carolina, it seems obvious that South Carolina's interest in these particular prisoners is paramount to ours, and for that reason it would be inappropriate and contrary to sound policy for the courts of this state to arrogate to themselves the prerogative of declaring that South Carolina has forfeited the right to enforce its laws against them. In short, we hold that the privilege of determining whether South Carolina has lost that right should rest exclusively with the courts of that state. This result is, we believe, consistent with the spirit of, if not literally required by, that section of the interstate compact (Article III, KRS 439.-560) providing that the decision of the sending state to retake a person on probation or parole shall be conclusive upon and not reviewable within the receiving state. See also Jeffers v. State, 217 Ga. 740, 124 S.E. 2d 753 (1926).

The point is made that there was no proof that the compact set forth in KRS 439.560, though authorized, had been executed by the governor. We concur in the opinion of the trial court that it was admitted by the allegation in appellants' petition "that supervision of their parole was transferred to the Commonwealth of Kentucky, pursuant to *and in accordance with* KRS 439.560," etc. (Emphasis ours.)

Certain procedural questions have arisen during the course of this litigation which require comment and clarification.

■ In its judgment denying relief the trial court directed that appellants be admitted to bail in the amounts of $10,000 each pending their appeal. This was erroneous.

"According to one line of authorities, on appeal from an adverse judgment in habeas corpus proceedings, the petitioner is entitled to bail pending the appeal. * * * But some courts hold that where, on habeas corpus, an order is made dismissing the writ and remanding the prisoner to custody, he is not entitled, pending appeal from the order, to be admitted to bail and released from custody on giving bond. Reasons given for this rule are that habeas corpus proceedings are not criminal proceedings and the statutes in relation to bail have no application to such a case, and that the effect of admission to bail would be indirectly to afford the prisoner the affirmative relief denied to him in denying his application for discharge from custody." 8 Am.Jur.2d 804 (Bail and Recognizance, § 36). See also annotations, 63 A.L.R. 1495, 143 A.L.R. 1358.

"It is the prevailing view that habeas corpus is, in its nature, a civil rather than a criminal proceeding, even though sought in behalf of one charged with, or convicted of, crime." 25 Am.Jur. 151 (Habeas Corpus, § 12).

We concur in the view that habeas corpus is essentially a civil proceeding. Hence the bail provisions [8] of our Rules of Criminal Procedure which might otherwise have justified the granting of bail pending appeal do not apply. The only applicable law on the subject in this case is furnished by KRS 419.130(2), as follows:

"*If the judgment* in a habeas corpus proceeding *orders the release of the person detained,* any party may have the judgment stayed until the appeal is filed by notifying the judge rendering

---

8. RCr 12.78, 12.82.

the judgment that he intends to appeal and upon complying with such terms as to bond or otherwise as the judge deems proper for the security of the person detained. The Court of Appeals may continue, modify or set aside the stay pending the appeal. The appellant may be required to give security for costs." (Emphasis ours.)

 It will be noted that bond is authorized pending appeal in a habeas corpus proceeding only when the judgment has discharged the person detained. This, of course, is not a bail bond, but is a special security provision within the discretion of the trial court. The prompt and summary manner in which the statutes direct both trial and appeal to be conducted in habeas corpus cases negates any intent that bail be allowed: "The writ must be made returnable as soon as possible." KRS 419.030. "The hearing on the writ shall be summary in nature." KRS 419.110(1). "Upon the filing of the appeal the clerk shall immediately deliver the papers to the Chief Justice, and the court shall proceed immediately to hearing thereof and complete the same as soon as practicable. If the court is in vacation at the time the appeal is filed, the Chief Justice shall call together a majority of the judges of the court who shall hear and determine the appeal as in regular session." KRS 419.130(1).

Appellants filed notice of appeal on the same day the judgment was entered. One week later appellee applied to this court during its summer recess for a stay of that portion of the judgment admitting appellants to bail. While this motion was pending appellee moved the trial court to rescind the bail provision of the judgment but was overruled on the ground the trial court no longer had jurisdiction of the case. Reciting that circumstance, appellee then moved this court to rescind the bail proviso. Meanwhile, appellants posted bond and were released. The matter was brought on for hearing before a single judge and resulted in an order issued by Judge Bird sustaining the motion. We now have before us a motion that Judge Bird's order be set aside as unauthorized because it was not the act of a quorum of the court.

 Const. § 117 provides that a majority of the members of this court shall constitute a quorum for the transaction of business. This has been construed by RCA 1.010 as applicable only to final decisions and matters of policy. RCA 1.010(c) authorizes disposition of interlocutory matters by a single judge. Like the interlocutory orders of any court, actions taken by a single judge of this court are subject to modification or revocation until the court has finally disposed of the case. Judge Bird's order was of this character, and we find no cause to set it aside as unauthorized.

 The instance of an appellee's application to this court for a stay of some feature of a judgment from which he has not appealed is unusual. It is not specifically covered in the Civil Rules.[9] Nonetheless, an appellate court has inherent power to issue such remedial orders as are appropriate to maintain the status quo of a case pending before it on review. Cf. Const. § 110; 4 Am.Jur.2d 840–841 (Appeal and Error, § 366). This is similar to the authority for a writ of prohibition when the lower court, while the case is pending before it, acts or is about to act erroneously within its jurisdiction to the great and irreparable injury of one of the litigants with no adequate remedy at law. Potter v. Trivette, 303 Ky. 216, 197 S.W.2d 245 (1946). As the case had been appealed and was pending before this court, CR 81 [10]

9. CR 62.02 and 65.08 establish procedure for a stay order on motion of any party pending appeal of an injunction case. CR 62.03 provides for the stay of any other kind of judgment through execution of a supersedeas bond by the appellant.

10. Which provides that relief heretofore available by various writs may be obtained by appropriate motion.

is broad enough to authorize the procedure followed by appellee in seeking interlocutory relief from that portion of the judgment admitting appellants to bail. The effect of Judge Bird's order is more fully discussed in the companion case of Crady v. Bensinger, Ky., 370 S.W.2d 820.

The judgment is affirmed.