Commonwealth ex rel. Osburn, Appellant,
*v.* Haas.

342

Submitted November 11, 1969, and May 5, 1970. Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

*James F. McClure, Jr.,* and *McClure & McClure,* for appellant.

*A. Thomas Wilson,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE POMEROY, July 13, 1970:
On June 6, 1969, appellant Roy Osburn was taken into custody by appellee, the Sheriff of Union County, on a detainer warrant charging that he was a fugitive

from justice in West Virginia. On June 30, 1969, the Governor of Pennsylvania, at the request of the Governor of West Virginia and in accordance with the provisions of the Uniform Criminal Extradition Act, Act of July 8, 1941, P.L. 288, 19 P.S. §§191.1, et seq., issued a Governor's Warrant for the arrest and extradition of appellant to West Virginia where he stood indicted for escape from lawful custody. Appellant filed a petition for a writ of habeas corpus with the Court of Common Pleas of the 17th Judicial District, Union County Branch. A hearing was duly held, and on August 9, 1969, the petition was denied and appellant was ordered extradited to West Virginia. The appeal at No. 494 January Term, 1969 was then filed. Subsequently appellant filed a supplemental petition for a writ of habeas corpus, which was also denied. The appeal from that order, No. 484 January Term, 1970, was consolidated with the earlier appeal. We affirm both orders.

Appellant does not contend that the normal statutory requirements for extradition have not been met and the record establishes that they have. *Commonwealth ex rel. Kelly v. Santo*, 436 Pa. 204, 206, 259 A. 2d 456 (1969); *Commonwealth ex rel. Flood v. Pizzo*, 434 Pa. 208, 211, 252 A. 2d 656 (1969). He contends, rather, that certain collateral matters relating to the delay in procuring his return to West Virginia render his extradition improper and entitle him to release from custody.

In the first place, appellant argues that his right to a speedy trial in West Virginia, guaranteed under the Sixth Amendment of the Constitution of the United States, as made applicable to the States through the Fourteenth Amendment,[1] has been violated by West

---

[1]See *Klopfer v. North Carolina*, 386 U.S. 213, 18 L. Ed. 2d 1 (1967).

Virginia's delay in procuring his presence for trial. Whatever may be the merits of appellant's position on this point, they are not cognizable in an extradition proceeding. When and if appellant is tried in West Virginia he can raise this constitutional claim. *Commonwealth ex rel. Flood v. Pizzo, supra,* at 211.

Appellant next asserts that the authorities of Monongalia County, West Virginia, have refused to pay the costs and expenses of his detention in Pennsylvania and contends that such a refusal demonstrates a lack of good faith on the part of that State's authorities such as to constitute a waiver by them of their right to extradite him. This allegation also, even if we were to assume its truth,[2] would form no basis for appellant's release. It is true that section 24 of the Uniform Criminal Extradition Act, 19 P.S. §191.24, provides: "All costs and expenses shall be paid out of the county treasury in the county wherein the crime is alleged to have been committed." But the subject of the extradition is not a third party beneficiary of this provision, and a failure to comply with this requirement in no way

---

[2]The only evidence adduced by appellant in support of his allegation of refusal by West Virginia to pay costs and expenses are three documents attached to his supplemental petition: (1) a statement submitted by the Sheriff of Union County of costs and expenses totaling $994.25; (2) a copy of a letter from the Union County Solicitor to the Monongalia County, West Virginia, Sheriff's Department forwarding this statement and informing the addressee that the bill was required to be paid within ten days; and (3) a copy of a letter from the Sheriff and Treasurer of Monongalia County to the Prosecuting Attorney of that County stating that, as appellant was being held at the request of the Prosecuting Attorney's office, the Sheriff could not authorize or request payment of the bill. The letters are dated September 10 and 16, 1969, respectively; nothing in the record indicates what has happened since the latter dates. The court below made no specific finding on this issue. We would not construe this correspondence as establishing a refusal by West Virginia authorities to pay these costs and expenses.

harms him. If a dispute indeed exists over the payment of these costs, it is solely between the executive authorities of the States involved; it does not infringe the rights of the prisoner.[3]

The only procedural defect in the extradition proceeding itself to which apellant directs our attention is the failure formally to re-arrest him on the Governor's Warrant within thirty days of his initial arrest on the magistrate's warrant,[4] as required by Section 15 of the Uniform Criminal Extradition Act, 19 P.S. §191.15. As appellant was properly in the custody of appellee at the time the Governor's warrant was issued, and as that warrant was issued within thirty days of appellant's initial arrest, we cannot see what possible harm appellant suffered by virtue of the failure formally to re-arrest him. The Act having been complied with in all

_____

[3]Appellant has brought to our attention no case in which a dispute of this type has been held a proper basis for release of the subject of the extradition and our research has revealed none. In fact, in the passage cited to us from the case which appellant believes is most closely in point, the United States Supreme Court expressed a view similar to our present holding: "It is sufficient now to say that the warning given to the Governor of Missouri that Mississippi would not be responsible for any expense attending the arrest and delivery of the alleged fugitive was a matter for the consideration of the Governor of the former State when he received the official demand for the arrest and delivery of the appellant as a fugitive from justice and a copy of the indictment against Marbles, certified as authentic. *It was not a matter that could legally affect the inquiry before the Circuit Court on habeas corpus*, whether the requisition . . . were in substantial conformity with the Constitution and the laws of the United States, and, therefore, not in any legal sense hostile to the liberty of the accused." *Marbles v. Creecy*, 215 U.S. 63, 69, 54 L. Ed. 92, 30 S. Ct. 32 (1909). (Emphasis supplied.)

[4]The day following his initial arrest by appellee on the detainer warrant, appellant was re-arrested on a warrant issued by a Union County magistrate on information supplied by a justice of the peace of Morgantown, West Virginia, in accordance with section 13 of the Uniform Criminal Extradition Act, 19 P.S. §191.13.

essential particulars, we agree with the court below that this formalistic oversight does not entitle appellant to the writ.

Finally, appellant contends that West Virginia has waived its right now to seek his extradition. He bases this contention on the following facts. His alleged escape from a prison detail occurred on June 24, 1968. Approximately one month later he was apprehended in Rehoboth Beach, Delaware, on a petty larceny charge. He was identified as a fugitive from West Virginia and, when he appeared before a Delaware magistrate, he agreed to waive extradition and return to West Virginia. Appellant testified at the hearing below that written notice of his agreement to return was then mailed to West Virginia. Whether or not this uncorroborated statement was true, during appellant's subsequent twenty day incarceration in Delaware on the petty larceny charge the West Virginia authorities apparently made no effort to take him into custody.

At the expiration of the Delaware sentence, appellant was arrested on a federal detainer for violation of the Dyer Act (transporting a stolen automobile in interstate commerce) and arraigned before a United States Commissioner in Wilmington, Delaware. At that time he waived grand jury presentment on the federal charge and was transferred by the federal authorities to Pennsylvania where he was incarcerated pending trial.

On December 9, 1968, appellant was tried and convicted on the Dyer Act charge in the District Court of the United Staes for the Middle District of Pennsylvania and sentenced to the Federal Northeastern Penitentiary at Lewisburg, Union County, Pennsylvania, for one year and one day. It was upon his release from this incarceration that he was taken into the custody of the appellee Sheriff.

Appellant urges that by failing to acquire custody of him after he agreed, in Delaware, to waive extradition to West Virginia, the authorities of the latter State waived their right to have him extradited now.

The right of a state to have a fugitive from its justice returned is guaranteed by the United States Constitution.[5] Because this right stems from the Constitution, this Court has indicated its reluctance to find a waiver of it except in the clearest case. Thus in *Commonwealth ex rel. Bonomo v. Haas,* 428 Pa. 167, 236 A. 2d 810 (1968), we held that a release by a state having custody of a prisoner to the federal authorities did not constitute a waiver by the surrendering state of its right to have him returned there upon his release by the federal authorities where the surrendering state had conditioned its release upon the filing of a detainer for his arrest at the expiration of his federal proceeding.

Here the indicia of waiver are even fewer than they were in the *Bonomo* case. West Virginia has never had custody of appellant since appellant committed the crime for which extradition is being sought; it had only the briefest period while he was detained in Delaware to acquire such custody. Moreover, the evidence presented here that West Virginia had notice of this fleeting opportunity to secure custody of appellant is far from convincing. The court below made no finding that West Virginia had notice; it merely noted that appellant had so testified. The standard to be used in determining whether or not there has been a waiver of a federal constitutional right was enunciated by the United States Supreme Court in *Brookhart v. Janis,* 384 U.S. 1, 4, 16 L. Ed. 2d 314, 317, 86 S. Ct. 1245

---

[5]Article IV, Section 2 provides: "A person charged in any state with treason, felony or other crime, who shall flee from justice, and be found in another state, shall on demand of the executive authority of the state from which he fled, be delivered up, to be removed to the state having jurisdiction of the crime."

(1966) : "There is a presumption against the waiver of constitutional rights, . . . and for a waiver to be effective it must be clearly established that there was 'an intentional relinquishment or abandonment of a known right or privilege.' *Johnson v. Zerbst*, 304 U.S. 458, 464." The facts of this case do not clearly establish that West Virginia has ever intentionally abandoned a known right; we can, therefore, find no waiver here.

Orders affirmed.