*In re* SIMMANS

PEOPLE v SIMMANS

1. EXTRADITION—HABEAS CORPUS—SCOPE.

   The scope of extradition habeas corpus proceedings is limited to a determination of a defendant's identity as the wanted man, a determination of fugitivity, and a review of the regularity of the extradition proceedings.

2. EXTRADITION—FUGITIVE—STATUTES—WORDS AND PHRASES.

   A defendant is a "fugitive" under the Uniform Criminal Extradition Act where he is ascertained to be the person wanted in the demanding state and was present in the demanding state at the time the alleged offense occurred; therefore, a person may be extradited even though he left the demanding state with the knowledge and consent of officials of that state (MCLA 780.1 *et seq.).*

3. EXTRADITION—BASES FOR APPLICATION—FUGITIVE—STATUTES.

   The section of the Uniform Criminal Extradition Act providing the requirements to be followed before an extradition application can be recognized does not set out all of the bases of fugitivity to the exclusion of others but is a compilation of the most common bases on which a defendant is determined to be a fugitive (MCLA 780.3).

4. EXTRADITION—HABEAS CORPUS—DELAY—SPEEDY TRIAL.

   A claim that delay in initiating extradition proceedings is a denial of a speedy trial is not an issue which may be raised in a habeas corpus proceeding challenging the validity of the extradition process but must be adjudicated in the demanding state.

Appeal from Cass, James E. Hoff, J. Submitted

REFERENCES FOR POINTS IN HEADNOTES
[1] 31 Am Jur 2d, Extradition §§ 26, 64, 65.
[2, 3] 31 Am Jur 2d, Extradition §§ 14–20, 53.
[4] 31 Am Jur 2d, Extradition § 25.

Division 3 May 7, 1974, at Grand Rapids. (Docket No. 17035.) Decided June 25, 1974.

Complaint by Edward N. Simmans for a writ of habeas corpus to determine validity of an extradition warrant. Writ denied. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Michael E. Dodge,* Prosecuting Attorney (Prosecuting Attorneys Appellate Service, *Howard C. Marderosian,* Acting Director, and *William P. Weiner,* Special Assistant Attorney General, of counsel), for the people.

*O'Connor, Feldman & Tushla,* for defendant.

Before: ALLEN, P. J., and J. H. GILLIS and QUINN, JJ.

ALLEN, P. J. Defendant appeals from denial by the circuit court of a writ of habeas corpus challenging the validity of an extradition warrant directing defendant's return to Ohio.

January 17, 1968, defendant was found guilty by jury in the Common Pleas Court of Lucas County on four counts of obtaining money on signature by false pretenses. He was sentenced to imprisonment for one to three years on each count, the sentences to be served concurrently, and released on bond pending appeal to the Court of Appeals for Lucas County. At the time of the alleged offenses defendant was employed as Safety Service Director of the City of Port Clinton, Ohio. In a split decision in May, 1969, the judgment was reversed by the Court of Appeals and the defendant "ordered dis-

charged". *State v Simmans,* 18 Ohio App 2d 143; 247 NE2d 785 (1969).

On December 2, 1969, defendant left Ohio and took up residence in Dowagiac, Michigan, where he became gainfully employed, at one time as City Manager of Dowagiac and presently in private employment. His leaving Ohio was apparently with the knowledge and consent of Ohio officials who at all times knew of defendant's whereabouts in Michigan. On March 25, 1970, the Ohio Supreme Court reversed the Court of Appeals and reinstated the conviction and sentence. *State v Simmans,* 21 Ohio St 2d 258; 257 NE2d 344 (1970). The final paragraph of the Supreme Court's opinion reads:

> "The mere fact that defendant is at liberty through a misapprehension of the law by the lower courts or its clerks, or even by the prosecuting attorney in this case, does not divest this court of jurisdiction of the appeal or of the defendant. The conclusions stated in *State v Aspell,* 5 Ohio App 2d 230 [214 NE2d 834 (1966)], and relied upon by the defendant, are disapproved. The defendant is amenable to process by the state to resecure custody over him at any time."

In January 1972, some 20 months after the decision by the Ohio Supreme Court, the Fourth District Court of Michigan issued a fugitive warrant against defendant pursuant to a complaint filed the same day by the sheriff of Cass County, Michigan. This complaint was dismissed by the district court because extradition proceedings had not been perfected by Ohio and no warrant had been issued by Michigan. Following perfection of extradition proceedings, defendant was then arrested under a warrant issued May 23, 1972 by Governor William G. Milliken of Michigan, and brought before the circuit court for arraignment,

at which time defendant challenged the validity of the extradition and requested a writ of habeas corpus. On June 20, 1972, an evidentiary hearing was held before the circuit court, following which the court denied the writ of habeas corpus but granted stay of execution so that defendant could appeal to this court.

In *Williams v North Carolina,* 33 Mich App 119, 123 fn 4; 189 NW2d 858 (1971), *lv den,* 386 Mich 753 (1971), this Court noted that the scope of extradition habeas corpus proceedings is limited to a determination of defendant's identity as the wanted man, a determination of fugitivity and a review of the regularity of the extradition proceedings. The issue of identity is not raised in this appeal, the main thrust of the defendant's challenge to the extradition proceedings being to the issue of fugitivity. Defendant contends that because the demanding state judicially sanctioned his release from the custody of its law-enforcement officials placing no restrictions upon his return and because his release was effected with the full knowledge and approval of law-enforcement officials, defendant is not a "fugitive" as that term is used in the Uniform Criminal Extradition Act. MCLA 780.1 *et seq.;* MSA 28.1285(1) *et seq.* On this issue there is no Michigan decision directly on point. However, similar factual situations have been considered in other jurisdictions which have consistently concluded that an individual may be extradited even though he left the demanding state with the knowledge and consent of officials of that state.[1]

---

[1] *See Grogan v Welch,* 55 SD 613; 227 NW 74 (1929), where upon arraignment in North Dakota on charges of theft of an automobile the prosecuting attorney dismissed the charges and allowed defendant to return without condition to South Dakota. Later, the charges were reinstated and extradition from South Dakota sought. Defendant challenged the proceedings on the ground he was not a fugitive since

"The fact that the alleged fugitive from justice left the state with the consent or knowledge of the state authorities or of complainant does not affect his status as a fugitive from justice, where he refuses to return or there is a second indictment or complaint." 35 CJS, Extradition, § 10, p 396.

"If knowledge of, or consent by, state officers is ineffectual against subsequent interstate rendition, much less is the knowledge or consent of the complaining witness effectual." *In the matter of Roberts,* 186 Wash 13, 22; 56 P2d 703, 707 (1936).

In conformity with the decisions in other states, we hold that "fugitivity" is shown when, as in the case now before us, defendant is ascertained to be the person wanted in the demanding state and was present in the demanding state at the time the alleged offense occurred.

"So that the simple inquiry must be whether the person whose surrender is demanded is in fact a fugitive from justice, not whether he *consciously* fled from justice in order to avoid prosecution for the crime with which he is charged by the demanding state. A person

---

North Dakota had given him permission to leave. To similar effect *see Basing v Cady,* 208 US 386; 28 S Ct 392; 52 L Ed 540 (1908), where defendant, indicted in New York for grand larceny, was released on motion of the district attorney and returned to Rhode Island. Later, a second indictment was issued for the same offense and an extradition warrant issued by the Governor of Rhode Island. Defendant's claim he was not a fugitive because of consent given to return to Rhode Island was rejected. *See also Ex parte Williams,* 71 SD 95; 21 NW2d 593 (1946), where defendant, charged with two counts of forgery and four counts of issuing checks without sufficient funds in Nebraska, was allowed to return to South Dakota after the prosecuting attorney moved to dismiss four of the charges and defendant agreed to pay restitution and fines on the other two counts. Defendant fully complied, but the four charges were never dismissed, and the trial court failed to sentence defendant, failed to file a judgment of dismissal, conviction or sentence, and failed to accept defendant's payment in discharge of the fines. Defendant's challenge to the extradition warrant on the grounds that he was not a fugitive was rejected, the South Dakota Supreme Court noting that the "demands of the law of the State of Nebraska * * * " had not been satisfied. 71 SD 95, 97; 21 NW2d 593, 594.

charged by indictment or by affidavit before a magistrate with the commission within a state of a crime covered by its laws, and who, after the date of the commission of such crime leaves the state—no matter for what purpose or with what motive, nor under what belief—becomes, from the time of such leaving, and within the meaning of the Constitution and the laws of the United States, a fugitive from justice, and if found in another state must be delivered up by the governor of such state to the state whose laws are alleged to have been violated, on the production of such indictment or affidavit, certified as authentic by the governor of the state from which the accused departed. Such is the command of the supreme law of the land, which may not be disregarded by any state." *Appleyard v Massachusetts,* 203 US 222, 227; 27 S Ct 122, 123; 51 L Ed 161, 163 (1906).

Defendant next attacks the regularity of the extradition proceedings, contending that the statutory requirement of § 3(3) of the Uniform Criminal Extradition Act was not followed. MCLA 780.3; MSA 28.1285(3). That section provides that the extradition application shall not be recognized unless accompanied by

"a statement by executive authority of the demanding state that the person claimed has escaped from confinement or has broken the terms of his bail, probation or parole."[2]

No such statement was included for the obvious reason that defendant had not escaped from confinement or broken terms of bail, probation or parole.

In *Commonwealth v Price,* 405 Pa 384; 175 A2d

---

[2] *See Campbell v Genesee County Sheriff,* 15 Mich App 210, 215; 166 NW2d 267 (1968), where the same challenge was made as to the regularity of the demanding state's application but which challenge was not passed upon by the Court, reversal being had on other grounds.

852 (1961), the Governor's statement could not be worded in the statutory language since none of the categories were applicable. This was found to be harmless error. In *Commonwealth ex rel Taylor v Superintendent Philadelphia County Prison,* 382 Pa 181, 185–186; 114 A2d 343, 345 (1955), a similar problem was raised and the Court said:

"No technical or formal objections to the proceedings, such as have been presented here, should be allowed to prevail. To require that the allegations be in the specific words of the Act would be unduly strict; and if the meaning of the allegations made, reasonably and substantially amount to the charge required, the proceedings will be upheld."

It would subvert the purpose of the Uniform Criminal Extradition Act to hold that § 3(3) sets out all of the bases of fugitivity to the exclusion of others. We hold that this section is a compilation of the most common bases on which a defendant is determined to be a fugitive. We further find that the statement of Ohio authorities sufficiently set out the averments showing defendant to be a fugitive.

Defendant's remaining claim of error is that the 20-month delay between the decision of the Ohio Supreme Court and the institution of extradition proceedings denied defendant a speedy trial and was a violation of his constitutional rights. This claim was not raised either in defendant's application for writ of habeas corpus or in the proceedings held thereon in the circuit court. The appellate court is not the appropriate forum for first raising such issue. *People v Sterbins,* 32 Mich App 508, 511; 189 NW2d 154 (1971). A claim that delay in initiating extradition proceedings is a denial of a speedy trial is not an issue which may be raised

in a habeas corpus proceeding challenging the validity of the extradition process, but must be adjudicated in the demanding state. *People ex rel Arnold v Hoy,* 32 Misc 2d 824, 825–826; 223 NYS2d 759, 761 (1961). *Roberts v Hocker,* 85 Nev 390, 395; 456 P2d 425, 428 (1969); *State ex rel Garner v Gray,* 59 Wis 2d 323, 329–330 fn 11; 208 NW2d 161, 164 (1973).

Finally, we would observe that the delay is hardly a denial of a speedy trial since, in the present case, trial had already been held.

Affirmed.

All concurred.