No. 26934

**William D. Gottfried v. Dan Cronin, Manager of Safety, and Ex-Officio Sheriff of Denver, and Wayne K. Patterson, Warden of the Jail, City and County of Denver, State of Colorado**

(555 P.2d 969)

Decided October 18, 1976.

■■■■  ■■■■■■■

Brenman, Sobol & Baum, Leo T. Zuckerman, for petitioner-appellant.

J. D. MacFarlane, Attorney General, Jean E. Dubofsky, Deputy, Edward G. Donovan, Solicitor General, Thomas J. Tomazin, Assistant, for respondents-appellees.

*En Banc.*

MR. JUSTICE HODGES delivered the opinion of the Court.

Appellant William Gottfried is being held in Colorado pursuant to extradition proceedings initiated by California. He petitioned the trial court for a writ of habeas corpus. He argued that he should be released from custody because the California requisition failed to show that he was a fugitive from justice. The trial court discharged the writ of habeas corpus and ordered Gottfried to be returned to California. We affirm.

Gottfried was arrested in California and charged with aggravated robbery. He pled guilty to the charge but failed to appear at a probation and sentencing hearing. He was subsequently arrested for robbery in Iowa, convicted, and sentenced to a term of twenty-five years in the Iowa State Penitentiary.

Thereafter, Gottfried was sent back to California, over his objection, to stand trial for escape and to be sentenced for his earlier aggravated robbery conviction. His transfer was accomplished pursuant to the Interstate Agreement on Detainers which permits the transfer of a prisoner from one state to another for purposes of prosecuting him on a charge pending in

the other state.[1] In California, Gottfried pled guilty to the escape charge. He was given a five-year to life sentence for robbery, and a six-month to five-year sentence for escape. The sentences were to run concurrently with any unexpired sentences previously imposed in other states. Gottfried was therefore returned to Iowa to begin serving his sentences there.

On his return to Iowa, Gottfried was released from the Iowa penitentiary after his Iowa conviction was reversed. He refused to waive extradition back to California. While on bond in Iowa, pending extradition proceedings, the petitioner was arrested in Denver, Colorado.

The Governor of California formally requested Colorado to return Gottfried to California pursuant to the United States Constitution, as well as the Uniform Criminal Extradition Act, which has been enacted in both California and Colorado. The requisition stated that Gottfried was present in California when he committed the crimes of robbery and escape; that he was convicted and sentenced; that he violated the terms of his sentence; and that he fled from the justice of the state.

## I.

Gottfried asserts that the demand by California does not state adequate grounds for extraditing him under the Uniform Criminal Extradition Act as enacted in Colorado. He argues that section 16-19-104, C.R.S. 1973, authorizes the extradition of a person convicted of a crime only if the demanding state alleges that he "escaped from confinement, or has broken the terms of his bail, probation, or parole."[2] California, he reasons, cannot make such a claim because it voluntarily released him to Iowa to serve out his unexpired California sentence there.

■ However, we do not believe that such an interpretation of the Act is consistent with other portions of the Act or with its manifest purposes. For example, section 16-19-103, C.R.S. 1973, states that, in accord with *U.S. Const.* Art. IV, § 2, cl.2, and 18 U.S.C. § 3182 (1970), it shall be the duty of the governor to deliver up any person charged in a demanding state with a crime who has fled from justice and is found in Colorado.

---

[1] The exact terms of the agreement between Iowa and California for the return of Gottfried to California are not in the record. However, we note that Art. V(d) and (e) of the Interstate Agreement on Detainers provides that "temporary" custody of a prisoner may be given to another state to permit prosecution of that prisoner in that state, and that the prisoner is to be returned to the original state "at the earliest possible time." Art. V(g) of the Agreement also states that the prisoner shall be deemed to remain in the custody of the original state at all times. *See* West. Cal. Penal Code § § 1389 *et seq.* (1970) and Iowa Code Anno. § § 759 A.1 *et seq.* (1975).

[2] 16-19-104. *Form of demand.* No demand for the extradition of a person charged with crime in another state shall be recognized by the governor unless in writing alleging . . . that the accused was present in the demanding state at the time of the commission of the alleged crime, and that thereafter he fled from the state, and accompanied by a copy of an indictment found or by information supported by affidavit in the state having jurisdiction of the crime, or by a copy of an affidavit made before a magistrate there, together with a copy of any warrant which was issued thereupon, or by a copy of a judgment of conviction or of a sentence imposed in execution thereof, together with a statement by the executive authority of the demanding state that the person claimed has escaped from confinement or has broken the terms of his bail, probation, or parole.

We have previously held the clause "any person charged with a crime" includes a person whose judgment of conviction remains unsatisfied. *Travis v. People*, 135 Colo. 141, 308 P.2d 997 (1957). Moreover, the phrase "fled from justice" has generally been interpreted to cover individuals who are merely absent from the state when they are sought to answer for a crime, irrespective of their manner of leaving the state. *See, e.g., Hogan v. O'Neill*, 255 U.S. 52, 41 S.Ct. 222, 65 L.Ed. 497 (1921); *Roberts v. Reilly*, 116 U.S. 80, 96 S.Ct. 291, 29 L.Ed. 544 (1885). *See also* 31 Am. Jur. 2d *Extradition* § 15 and 35 C.J.S. *Extradition* § 10. Thus, under section 16-19-103, there is little question that Gottfried can be classified as a fugitive from justice.

Furthermore, the extradition law is designed to prevent the successful escape of all persons accused of crime, whether convicted or not, and to secure their return to the state from which they fled for their due punishment. *Travis v. People, supra. See also Boyd v. Van Cleave*, 180 Colo. 403, 505 P.2d 1305 (1973). Consequently, we have held that the extradition statutes should not be so narrowly construed as to enable offenders against the laws of a state to find permanent asylum in another state. *Glenn v. Baker*, 184 Colo. 211, 519 P.2d 349 (1974). *See also In re Strauss*, 197 U.S. 324, 25 S.Ct. 535, 49 L.Ed. 774 (1905).

In light of section 16-19-103 and the Act's purposes, we believe that section 16-19-104 does not limit the extradition of an individual convicted of a crime to instances where he has "escaped from confinement or has broken the terms of his bail, probation, or parole." Such language was only meant to be illustrative, but not exhaustive, of the occasions when a convicted person can be considered to have fled from the justice of another state. *Accord, Hedge v. Campbell*, 192 Kan. 623, 389 P.2d 834 (1964); *In re Simmans*, 54 Mich. App. 112, 220 N.W.2d 311 (1974); *Commonwealth ex rel. Crist v. Price*, 405 Pa. 384, 175 A.2d 852 (1961); and *State ex rel. Martin v. Boos*, 85 S.D. 484, 186 N.W.2d 130 (1971). Where, as here, the requisition papers show that the person has been charged and convicted in the demanding state, and that he has not completed his sentence, that person can be extradited to the demanding state under the Uniform Extradition Act.[3]

## II.

Gottfried also contends that California cannot extradite him because it, in effect, waived any further jurisdiction over him when it surrendered him to the custody of Iowa without placing a detainer on him. To support his position, he relies chiefly on the cases of *In re Whittington*, 34 Cal. App. 344, 167 P.404 (1917), and *Jones v. Rayborn*, 346 S.W.2d 743

---

[3] *Compare, Johnson v. Peterson*, 1 Wash. App. 856, 466 P.2d 183 (1970), in which the court permitted the extradition of an individual in similar circumstances as here, but under the authority of the *U.S. Const.* Art. IV, § 2, cl. 2.

(Ky. 1961).

The California Supreme Court, however, in *In re Patterson,* 64 Cal.2d 357, 411 P.2d 897, 49 Cal. Rptr. 801 (1966), expressly disapproved of the rule of *In re Whittington,* which was that a state's jurisdiction is automatically waived whenever it transfers a prisoner to another state. Instead, the court concluded that a waiver of jurisdiction should be found only in those cases in which the record contains affirmative evidence that the waiver was intended. It noted that § 25B of the Uniform Criminal Extradition Act (West's Cal. Penal Code § 1555.2) expresses a policy that no transfer of prisoners to another state should be deemed a waiver of the right to demand their return as fugitives from justice. Accordingly, it held that where a California prisoner is transferred to another state so that his time served there can be credited against his concurrent California sentence [as authorized by West. Cal. Penal Code § 669], California will not regard that transfer as a waiver of its jurisdiction.

Likewise, the automatic waiver rule suggested by *Jones v. Rayborn,* has also been discredited in later cases in the same jurisdiction. For example, in *Crady v. Cranfill,* 371 S.W.2d 640 (Ky. App. 1963), the court observed that the term "waiver" as used in *Jones* was actually a misnomer because what the court actually held was that a state could *forfeit* its right to return a prisoner because of its grossly unfair and arbitrary method of transferring him to another state without the protection of statutes establishing procedural safeguards. It also noted that the *Jones* rule was inconsistent with the provision in the Uniform Criminal Extradition Act which states that a transfer of prisoners should not be deemed a relinquishment of the right to extradite them in the future. Consequently, it held that the privilege of determining whether a demanding state waived its jurisdiction should be left largely with the demanding state, and not the asylum state.

We therefore believe that the better reasoned rule, and the rule prevailing in most jurisdictions, is that a waiver of jurisdiction should be found only in circumstances where the waiver is manifestly intended. *See Williams v. Dept. of Corrections,* 438 F.2d 78 (9th Cir. 1971); *Bullock v. Mississippi,* 404 F.2d 75 (5th Cir. 1968); *Commonwealth ex rel. Osburn v. Haas,* 439 Pa. 341, 268 A.2d 85 (1970); and *State ex rel. Martin v. Boos, supra.* Such a rule is consistent with the provision of the Uniform Criminal Extradition Act stating that no waiver should be presumed. It also promotes cooperation between the states in transferring individuals for purposes of speedy prosecution and punishment.

In this case, we find no circumstances which indicate that California intended to waive its right to extradite Gottfried when it released him back to Iowa. Because the transfer of Gottfried to California was pursuant to the Interstate Agreement on Detainers, California was likely under an obligation to release him back to the Iowa authorities following his

sentencing in California.[4] In any event, his return to Iowa was, at least, designed to allow him to serve his California sentence concurrently with his Iowa sentence. Under similar circumstances, the California Supreme Court has definitively ruled that such actions on the part of California do not indicate a waiver on its part to return an individual to serve out the remainder of his sentence. *In re Patterson, supra.* Finally, Iowa, California and Colorado have all enacted the Uniform Criminal Extradition Act which expresses the policy that no transfer of prisoners between states pursuant to statute shall be regarded as waiver of its jurisdiction. *See* section 16-19-127, C.R.S. 1973; Iowa Code Anno. § 759.26; and West.Cal. Penal Code § 1555.2. The sum of these factors convinces us that a waiver by California of the right to extradite Gottfried should not be presumed.

### III.

The appellant also contends that he will be denied due process if he is extradited to California. The basis of his argument appears to be that a state can forfeit its right to punish an individual by its arbitrary and unfair "shuttling" of him to another state's custody. *See Anderson v. State*, 386 P.2d 320 (Okla. Crim. App. 1963); *Jones v. Rayborn, supra.*

However, when a person has placed himself in the position of being convicted of crimes in several states, the question of how and when the sentences for such crimes are to be served is essentially a matter of comity between the states and not one of a personal, constitutional right of the person. *Alire v. People*, 171 Colo. 228, 466 P.2d 78 (1970); *Commonwealth ex rel. Bonomo v. Haas*, 428 Pa. 167, 236 A.2d 810 (1968); *Crady v. Cranfill, supra.* But assuming that a state could forfeit its right to punish a person by its unfair and arbitrary transfer of him to another state, such is not the case here. Iowa and California transferred Gottfried pursuant to statutory procedures duly enacted in both states. California extradited Gottfried from Iowa to insure his speedy trial on the pending charges against him. Again, for his benefit, it released him to Iowa so that he could serve his California sentence concurrently with that in Iowa. California has now instituted orderly procedures to extradite him back to California. This court can therefore perceive no unfairness to Gottfried as a result of his extradition.

We affirm the judgment of the trial court which discharged the appellant's writ of habeas corpus.

MR. CHIEF JUSTICE PRINGLE and MR. JUSTICE GROVES dissent.

---

[4] See n. 1 *supra.*

MR. JUSTICE GROVES dissenting:

I respectfully dissent.

In California the court ordered that the sentence of the defendant be served in Iowa. After the Iowa reversal, California sought extradition in Iowa. Iowa released him on bond pending determination of the extradition proceedings and he was legally in Colorado when arrested here.

He was not a fugitive. He was not in violation of any order. He was not untried under any charge. I find nothing in our statutes nor in the United States and Colorado Constitutions to authorize Colorado to return the defendant to California under the present proceedings.

MR. CHIEF JUSTICE PRINGLE authorizes me to say that he joins in this dissent.