Michael R. HUNT, Petitioner–Appellant,

v.

The STATE of Colorado DEPARTMENT OF CORRECTIONS, John Suthers, Buena Vista Correctional Facility, and Eugene Atherton, Respondents–Appellees.

No. 98SA421.

Supreme Court of Colorado, En Banc.

Aug. 30, 1999.

Michael R. Hunt, Pro Se Buena Vista, Colorado.

Ken Salazar, Attorney General, Barbara McDonnell, Chief Deputy Attorney General, Michael E. McLachlan, Solicitor General, Diane Marie Michaud, Deputy Attorney General, Paul S. Sanzo, First Assistant Attorney General, Civil Litigation Section, Denver, Colorado, Attorneys for Respondents–Appellees.

PER CURIAM.

The petitioner, Michael R. Hunt, filed a pro se petition for writ of habeas corpus in the Chaffee County District Court, alleging that he was illegally transferred out of Colorado by the Department of Corrections (DOC) to serve his sentence at the Prairie Correctional Facility (PCF) in Appleton, Minnesota. He further asserted that the contract between the DOC and the Appleton Economic Development Authority (AEDA), which owns the PCF in Appleton, Minnesota, is illegal and void. Finally, he claims that his illegal transfer operated as a waiver of Colorado's right to require him to serve the remainder of his sentence. Prior to the filing of the petition for habeas corpus, Hunt was transferred back to Colorado where he is currently confined at the Buena Vista Correctional Facility.

The district court denied the petition for habeas corpus, holding that even assuming Hunt's transfer to Minnesota was illegal, the only remedy available to him was to be returned to Colorado. *See Hunt v. Colorado Dep't of Corrections,* No. 98CV91 (Chaffee County Dist. Ct. Aug. 13, 1998) (order). The court found that since he has been returned to Colorado, Hunt is not entitled to relief. *See id.*

We conclude that the DOC's transfer of Hunt to Minnesota did not constitute a waiver of the state's jurisdiction over him or the right to require Hunt to serve the remainder of his sentence in the DOC, and that Hunt's other contentions are moot since he has been

returned to Colorado. We therefore affirm the judgment of the district court denying Hunt habeas corpus relief.

## I.

On October 28, 1991, the Jefferson County District Court sentenced Hunt to the custody of the DOC following his convictions for criminal attempt to commit second-degree murder, second-degree kidnapping, three counts of reckless endangerment, and third-degree assault. Hunt was sentenced to the custody of the DOC for sixteen years on the attempted murder count and eight years for the kidnapping count, the sentences to run consecutively. In addition, he was sentenced to six months in the county jail on each of the reckless endangerment counts, to run consecutively with each other and to his DOC sentences, and twenty-four months in the county jail for third-degree assault, to run consecutively to all of his other sentences.

Hunt was transferred to the PCF on April 24, 1997,[1] pursuant to a contract between the DOC and the AEDA, a political subdivision of the State of Minnesota. Hunt asserts that this transfer was involuntary and against his will. He also alleges that the DOC (or its Executive Director) was without the authority to "arbitrarily" house him in another state for violating Colorado penal statutes. According to Hunt, his transfer to Minnesota violated the Interstate Corrections Compact, see 4 U.S.C. § 112(a); §§ 24–60–1601 to – 1603, 7 C.R.S. (1998). More importantly, he claimed that this transfer out of Colorado constituted a waiver by Colorado of exercising any further jurisdiction over him. From this reasoning, he concludes that Colorado has relinquished its authority to make him serve the remainder of his sentence in this state.

In support of this contention, Hunt cites *Jones v. Rayborn*, 346 S.W.2d 743 (Ky.1961). In that case, a prisoner, Rayborn, was transferred against his will from a state prison to federal penitentiary before the expiration of

his state term. *See id.* at 745. The Director of Division of Corrections, acting under orders from Commissioner of Department of Welfare, directed the warden of the state penitentiary to release Rayborn before the expiration of his term of imprisonment, and over Rayborn's objection, to federal officers for transfer to the federal penitentiary. *See id.* It should be noted that Rayborn was transferred to the federal authorities to begin serving his federal sentence, not to continue serving his state sentence as is the case here. When Rayborn was released from the federal prison on parole, he was rearrested on a fugitive from justice warrant. The court held that when Kentucky transferred Rayborn while he was still serving his state sentence to federal authorities so that he could begin serving his federal sentence, the state waived the right to subject Rayborn to further punishment. *See id.* at 748. The court stated:

> The facts of this case force us to the conclusion that the manner and methods employed in handling Rayborn should not be tolerated. He was transferred to another prison beyond the jurisdiction of this State, apparently to serve the remainder of his term in a prison not authorized for such service by our statutes, against his will, and without agreement. By use of a detainer he was restrained after he had served time which would have made him eligible for parole under Kentucky law. Such practice has been severely condemned by the Interstate Commission on Crime. He was returned to Kentucky under an instrument which has no basis in law or in fact.

*Id.*

■ However, the facts of this case are distinguishable from those in *Rayborn.* Here, Hunt was transferred to the Minnesota facility to continue serving his Colorado sentence, not to serve the sentence of another jurisdiction. Section 24–60–1602(art. IV)(c) of the Interstate Corrections Compact provides:

1. Hunt asserts that he filed a petition for habeas corpus in the United States District Court for the District of Colorado on January 17, 1995, before he was transferred to Minnesota, alleging that he was being illegally confined in the DOC's Limon facility. Hunt states that his subsequent transfer to Minnesota violated an order of the federal district court. We do not have the record of that proceeding, and any action to enforce that order would lie in federal court.

Inmates confined in an institution pursuant to the terms of this compact *shall at all times be subject to the jurisdiction of the sending state* and may at any time be removed therefrom for transfer to a prison or other institution within the sending state, for transfer to another institution in which the sending state may have a contractual or other right to confine inmates, for release on probation or parole, for discharge, or for any other purpose permitted by the laws of the sending state ....

(Emphasis added.) Moreover, Colorado has not accepted the *Rayborn* automatic waiver rationale. In *Gottfried v. Cronin*, 192 Colo. 25, 30, 555 P.2d 969, 972–73 (1976), we noted that:

the automatic waiver rule suggested by *Jones v. Rayborn*, has also been discredited in later cases in the same jurisdiction. For example, in *Crady v. Cranfill*, 371 S.W.2d 640 (Ky.1963), the court observed that the term "waiver" as used in *Jones* was actually a misnomer because what the court actually held was that a state could forfeit its right to return a prisoner because of its grossly unfair and arbitrary method of transferring him to another state without the protection of statutes establishing procedural safeguards.

Consequently, the *Gottfried* court stated that "the better reasoned rule, and the rule prevailing in most jurisdictions, is that a waiver of jurisdiction should be found *only in circumstances where the waiver is manifestly intended.*" 192 Colo. at 30, 555 P.2d at 973 (emphasis added).

When it transferred Hunt to Minnesota to continue serving his Colorado sentence, the DOC manifestly did *not* intend to waive its jurisdiction over him. We therefore conclude that Colorado did not waive its jurisdiction over Hunt by transferring him to Minnesota.

## II.

■ The remaining issues are controlled by our decision in *Brown v. Colorado Department of Corrections*, 915 P.2d 1312 (Colo. 1996). Like Hunt, after being sentenced to the custody of the DOC, Brown was transferred to the PCF in Minnesota in order to alleviate the prison backlog in Colorado. *See*

*id.* at 1313. Brown filed a petition for habeas corpus claiming that his transfer violated the Interstate Corrections Compact and also Article VIII, section 1, of the Colorado Constitution ("Educational, reformatory and penal institutions, and those for the benefit of insane, blind, deaf and mute, and such other institutions as the public good may require, shall be established and supported by the state, in such manner as may be prescribed by law.").

■ As a remedy for these alleged violations, Brown sought release from confinement or transfer back to Colorado. The district court denied Brown's petition for habeas corpus. *See Brown*, 915 P.2d at 1313. At the time he filed his appeal from the denial of his petition, however, Brown had been transferred back to Colorado and was confined in the Colorado State Penitentiary located in Cañon City, Colorado. Because he was back in Colorado at the time his petition for habeas corpus was pending, we concluded that any issues regarding the legality of his transfer to Minnesota were moot:

A case becomes moot when relief, if granted, would have no practical legal effect upon the existing controversy. *Van Schaack Holdings, Ltd. v. Fulenwider*, 798 P.2d 424, 426 (Colo.1990). When issues are presented in litigation, and become moot because of subsequent occurrences, an appellate forum will decline to render an opinion on the merits of the appeal. *Id.* at 427. In this case, the petitioner's transfer to the Colorado State Penitentiary renders his appeal moot. Both of the allegations contained in Brown's petition, if meritorious, were remedied by his transfer back to Colorado.

*Id.* A prisoner is entitled to a hearing on his petition for habeas corpus only if he makes a prima facie showing that his present confinement is invalid and that he is entitled to discharge. *See Deason v. Kautzky*, 786 P.2d 420, 423 (Colo.1990). As in the *Brown* case, because Hunt is presently confined in Colorado, in the custody of the DOC, his allegations of invalid confinement and invalid transfer have become moot. We therefore

affirm the district court's denial of the petitioner's petition for writ of habeas corpus.