UNITED STATES ex rel. Watson
MOULTHROPE,

v.

Edward MATUS.

Civ. A. No. 4373.

United States District Court,
D. Connecticut.

April 7, 1954.

William S. Gordon, Jr., Hartford, Conn., for petitioner.

Albert S. Bill, State's Atty., for Hartford County, Hartford, Conn., for respondent.

SMITH, Chief Judge.

On petition for habeas corpus, an order to show cause issued and after a number of postponements agreed to by counsel, petitioner was produced in open court on March 22, 1954, testified, and the matter was argued by counsel for petitioner and by the State's Attorney for Hartford County for respondent. The facts are substantially undisputed and are found to be as follows:

1. In December 1925, the petitioner was convicted of the crime of robbery by a Florida court and on February 9, 1926 was sentenced to serve five years in the Florida State Prison.

2. After he had served approximately two years, the Florida Board of Pardons, on January 23, 1928, granted him a conditional pardon, "upon the express understanding and condition that he lead a sober, peaceable and law-abiding life."

3. The petitioner then went to Connecticut, where, on May 14, 1929, he was convicted of robbery with violence and sentenced to a long term in the Connecticut State Prison.

4. While serving this sentence, he escaped and returned to Florida where, on March 19, 1930, he was convicted of the crime of murder in a Florida criminal court.

5. On or prior to March 26, 1930, the Governor of the State of Connecticut made requisition upon the Governor of the State of Florida for the return of the petitioner to the State of Connecticut to answer to the charge of escape from prison and the further charge of theft of motor vehicle.

6. On March 27, 1930, after the petitioner had been convicted of the murder charge but before he had been sentenced thereon, the Governor of Florida honored the requisition of the Governor of Connecticut and issued a Warrant of Extradition.

7. Thereafter on the same day, the petitioner was sentenced by the Florida court to imprisonment for life, and the court issued a mittimus commanding his delivery to the Florida State Prison to carry said sentence into effect.

8. The mittimus was given to a Florida Deputy Sheriff who took immediate custody of the petitioner in the courtroom.

9. Instead of delivering the petitioner to the Florida State Prison, the Florida Deputy Sheriff, in the company of representatives of the State of Connecticut, took the petitioner out the back door of the courthouse, drove him around Jacksonville, Florida, for about two hours while the petitioner's attorney was seeking a writ of habeas corpus in another Florida court, and then drove the petitioner to the Florida-Georgia state line, where he formally turned him over to the representatives of the State of Connecticut.

10. The petitioner had made a statement in open court and to the Florida authorities that he was fighting extradition to Connecticut until he had served his Florida sentence, and that he objected to being delivered to the Connecticut authorities.

11. The petitioner was removed from Florida and taken to Connecticut with the permission and assistance of the State of Florida and its duly authorized officers and agents and was removed from Florida under compulsory process at a time when the State of Florida had him in its custody.

12. In Connecticut, the petitioner was tried and convicted of the crimes of escape and theft of motor vehicle and on April 11, 1930 was sentenced to a long term in State Prison, where he has since remained.

13. On June 1, 1948, the Florida Board of Pardons withdrew the conditional pardon granted the petitioner in 1928 and ordered his return to custody to serve the unexpired portion of his original robbery sentence and to serve

the sentence of life imprisonment for murder.

14. On October 8, 1949, the Governor of Florida made requisition on the Governor of Connecticut for the return of the petitioner as a fugitive from justice, in that he "stands convicted of the Crime of Robbery, as shown by information found, Record of Conviction, Sentence, Conditional Pardon and Breach of Pardon, committed in Dade County," Florida; the June 1, 1948 action of the Florida Board of Pardons was attached to the requisition of the Governor of Florida.

15. Thereupon the Connecticut Governor issued his warrant to the respondent, Edward Matus, then a Connecticut State Policeman, requiring delivery of the petitioner to the Florida authorities.

16. The petitioner was forcibly and against his will delivered to the representatives of Connecticut while in the custody of Florida and, with the permission and assistance of the State of Florida, was removed from Florida and taken to Connecticut.

17. The petitioner, while in Florida's custody, upon conviction of a crime in Florida, left the jurisdiction not only other than voluntarily but by Florida's compulsory process.

18. Petitioner's breach of the pardon of January 23, 1928, was committed prior to his delivery to the representatives of the State of Connecticut on March 27, 1930; and the State of Florida had full power to proceed against the petitioner therefor while he was in Florida's custody prior to his delivery to the Connecticut representatives.

19. Petitioner sought and obtained, in the Superior Court for Hartford County, a writ of habeas corpus. Judgment was entered dismissing the writ and remanding petitioner into respondent's custody. On appeal to the Supreme Court of Errors of Connecticut, no error was found. 139 Conn. 272, 93 A.2d 149.

Application for a writ of certiorari was denied by the Supreme Court of the United States April 6, 1953. 345 U.S. 926, 73 S.Ct. 785, 97 L.Ed. 1357.

This application followed on the succeeding day.

Conclusions of Law

1. The court has jurisdiction of the parties and subject matter of the action.

2. The petitioner is legally in custody of respondent on a valid warrant of extradition.

3. Respondent is entitled to judgment dismissing the petition and discharging the order to show cause.

The sole question involved in this habeas corpus action is whether a person charged with crime in one state, and found in another must be a "fugitive" in the ordinary meaning of the word to be extraditable from the state of asylum to the demanding state.

The courts have gone a long way from the usually accepted meaning of "fugitive", holding that departure need not be voluntary where departure was forced by federal process or by a condition of pardon from conviction by courts of the demanding state.

In the case at bar the Connecticut courts, Moulthrope v. Matus, 139 Conn. 272, 93 A.2d 149, have taken the further step of holding that departure from the demanding state, Florida, by compulsory process of that state against an accused's objections (in this case a defendant convicted of murder and sentenced to life imprisonment in Florida, who was also a parolee on an earlier sentence open to a charge of parole violation) on the requisition of a state (Connecticut) which later became the state of asylum, constitutes the defendant a fugitive from Florida justice.

The executives and courts of both states apparently feel that it is desirable that interstate rendition of persons convicted of serious crime be had whether or not the departure from the demanding state was voluntary.

It might be claimed that the crime committed in the state of asylum provided the element of defendant's volition to be later moved from Florida to Connecticut and in that sense made him a fugitive from Florida justice.

If so, however, it is difficult to imagine any situation in which a man found in another state would not be considered automatically a fugitive from the demanding state, and the use of the terms "flee from Justice" in the Constitutional provision, art. 4, § 2, and "fugitive" in the federal statute, 18 U.S.C.A. § 3182, is in an unusual and restricted meaning. The law appears to have developed such a meaning.

The majority view now appears to be that mere presence in another state makes one a fugitive if charges (including an unexpired sentence) are pending in the demanding state.

The trend has been on the whole consistent.

It is difficult to make any logical distinction between the case at bar and cases where a prisoner was paroled on condition he leave the state which later became the demanding state.

It is true that carrying this doctrine to its ultimate limits, the case at bar, translates "flee from Justice" and "fugitive" in the Constitution and statute, to mean "one found in another state". The only case substantially identical on its facts, In re Whittington, 1917, 34 Cal. App. 344, 167 P. 404, refused to go so far.

However, while the reasoning of that case has been cited with approval in various dicta, most cases do not actually apply it, and it may be noted that California thereafter by statute provided for extradition in similar situations.

■ The decision of the Connecticut courts in the case at bar appears in accord with the trend of decisions in most states where related problems have arisen and may well be followed by this court.

No more is necessary for decision here, but even if we did not agree with the reasoning of the courts which hold "fugitive" synonymous with one found in another state, we must consider whether the power is not in the states, in the area not covered by the Constitu-

tional and Federal Statutory enactments covering "fugitives", to render up as a matter of comity those found within their borders against whom a valid charge of crime lies in a sister state. Cf. In re Morgan, 1948, 86 Cal.App.2d 217, 194 P.2d 800.

■ On the question of policy, it is important to just decision on the merits of criminal charges that prompt trial be had in every jurisdiction in which charges are pending.

Where some of the charges are federal, this may be accomplished by writ of habeas corpus ad prosequendum, in aid of removal proceedings where not in the same state, with return to state custody on completion of trial. Where the charges are those of more than one state, the same result may be accomplished only by extradition or interstate rendition without requiring a relinquishment of prosecution by either state.

■ If waiver is intended, it should of course be given effect. It should not be imposed as a legal fiction in order to make prompt trial in both jurisdictions possible.

It is doubtful if any intent to waive or pardon on the murder sentence can be found from the facts here. Even if the Florida courts would so hold, it must be noted that the request for extradition here is based on the charge of violation of the earlier parole. Cf. United States ex rel. Hunke v. Ragen, 7 Cir., 158 F.2d 644.

■ There is, of course, strong reason from the point of view of the prisoner for correlation of treatment or punishment by both jurisdictions. In the absence of constitutional and federal statutory basis, however, we may not require such correlation, but must leave it for cooperation between the prosecuting authorities, criminal courts and correctional authorities involved.

Judgment may be entered discharging the order to show cause and dismissing the petition for writ of habeas corpus.