STATE, Plaintiff in error, v. RITTER, Defendant in error.

*No. 75–220–CR. Argued September 14, 1976.—
Decided November 3, 1976.*
(Also reported in 246 N. W. 2d 552.)

For the plaintiff in error the cause was argued by *Michael R. Klos,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

For the defendant in error there was a brief by *Gerard O'Flaherty* and *Johns, Flaherty & Gillette, S. C.* of La Crosse, and oral argument by *Gerard O'Flaherty.*

ABRAHAMSON, J. This is an extradition habeas corpus case in which the circuit court ordered that the petitioner be released. The facts can be summarized as follows:

On August 30, 1974, Daniel Ritter, a resident of Wisconsin, was stopped in Houston county, Minnesota, on suspicion of stealing apples. A large quantity of marijuana was discovered under the front seat of the van he was driving, and he was placed under arrest. Ritter was approximately six weeks short of being eighteen years of age at the time of his arrest. He was released from jail into the custody of his father upon his executing a written promise "to return to the State of Minnesota to appear in any and all hearings and Court procedures involved in the prosecution of charges of possession of marijuana." Ritter's father countersigned this promise. On September 18, 1974, Ritter appeared in juvenile court in Houston county, and at that hearing, the amended petition of delinquency was dismissed by the juvenile judge for failing to allege that the act was committed in Houston county. An order of dismissal was dated September 25, 1974.

Shortly before Ritter's eighteenth birthday, he and his parents received by mail from the juvenile court of Houston county a copy of an order for hearing and a

copy of a petition for hearing on fitness to refer from juvenile court to a prosecuting authority; Ritter was not personally served with a notice of hearing. At a hearing in the juvenile court on October 18, 1974, Ritter's attorney made a special and limited appearance to challenge the jurisdiction of the Houston county juvenile court. The Houston county juvenile court found that it did have jurisdiction over Ritter and referred Ritter for prosecution as an adult.

On December 20, 1974, Ritter was charged with the felonious possession of a controlled substance in violation of sec. 152.09 (1) and (2), Minn. Stats. Annot., and a warrant for his arrest was issued by the Houston county court. The criminal complaint and warrant were used as the basis for a requisition by the governor of Minnesota for Ritter's return to Minnesota for criminal prosecution. A Wisconsin governor's warrant for Ritter's arrest was issued on the basis of the Minnesota requisition on April 9, 1975, and he was arrested on that warrant on April 21, 1975. Ritter thereafter filed a petition for a writ of habeas corpus in the circuit court for La Crosse county, in which he contended that the Minnesota juvenile court did not have jurisdiction over him in the proceeding to refer him for prosecution as an adult, and that it failed to comply with the notice provisions of the Minnesota statutes. The circuit court granted the writ of habeas corpus and ultimately entered an order for Ritter's discharge.

Interstate extradition is primarily governed by federal law, the obligation of the several states in this regard being founded on the second clause of sec. 2, art. IV of the United States Constitution:

"A person charged in any state with treason, felony, or other crime, who shall flee from justice, and be found in another state, shall, on demand of the executive authority of the state from which he fled, be delivered up,

to be removed to the state having jurisdiction of the crime."

Congress has enacted legislation implementing this clause,[1] but it has been long recognized that the states may properly enact consistent ancillary and supplemental legislation. *State ex rel. Foster v. Uttech* (1966), 31 Wis.2d 664, 668, 669, 143 N.W.2d 500; *State v. Hughes* (1975), 68 Wis.2d 662, 666, 667, 229 N.W.2d 655; *Innes v. Tobin* (1916), 240 U.S. 127, 36 Sup. Ct. 290, 60 L. Ed. 562. The Uniform Criminal Extradition Act, sec. 976.03, Stats., is legislation of this character. Sec. 976.03(10) provides that a person arrested shall be taken forthwith before a judge of a court of record in this state. The judge shall inform him of the demand made for his surrender and of the crime with which he is charged, and of his right to demand and procure legal counsel. If the prisoner or his counsel desires to test the legality of the arrest, the judge shall fix a reasonable time within which an application for a writ of habeas corpus may be made. Habeas corpus tests the legality of the detention under the governor's warrant of the asylum state.

The cases generally recognize that a court in a habeas corpus proceeding testing the legality of the detention may examine into the following four questions:

(1) Are the extradition papers in order and properly authenticated?

(2) Was a crime substantially charged under the law of the demanding state?

(3) Is the petitioner the person named in the extradition papers (identity)?

(4) Was the petitioner present in the demanding state at the time of the alleged offense (fugitive status)?

*Commonwealth ex rel. McGowan v. Aytch* (1975), 233 Pa. Super. 66, 334 Atl.2d 750. Note, *Extradition Habeas Corpus,* 74 Yale L. J. 78 (1964).

[1] 18 USCA, sec. 3182.

■ The first and second questions are questions of law. The third and fourth questions are questions of fact. *Brode v. Power* (1974), 31 Conn. Supp. 412, 332 Atl.2d 376. The second question—namely, whether a crime is charged—is the issue presented in this case. Such a challenge generally goes to the validity of the governor's warrant and not to procedural irregularities in the trial court of a sister state. *State ex rel. Welch v. Hegge* (1972), 54 Wis. 2d 482, 487, 195 N.W.2d 669.

■ ■ Detention under a governor's warrant is only *prima facie* valid, and the underlying documents may be examined to see if they can serve as a valid basis for a governor's rendition warrant. *State ex rel. Foster v. Uttech* (1966), 31 Wis. 2d 664, 671, 143 N.W.2d 500. The face of the documents in this case does not reveal the possibility that no crime was charged. However, the courts of the asylum state may take judicial notice of statutes of the demanding state to determine whether a crime has been charged.[2] We find that Minnesota law expressly provides:

"A violation of a state . . . law . . . by a child before becoming 18 years of age is not a crime unless the juvenile court refers the matter to the appropriate prosecuting authority in accordance with the provisions of section 260.125 . . . ." Sec. 260.215, subd. 1, Minn. Stats. Annot.

Thus if Ritter was a "child" under Minnesota juvenile law at the time of the alleged offense, he could not have been charged with a crime, as a matter of law, unless a reference to a prosecuting authority had been made.[3]

---

[2] *See State ex rel. Kojis v. Barczak* (1953), 264 Wis. 136, 58 N.W.2d 420; sec. 902.02(1), Wisconsin Rules of Evidence.

[3] *State ex rel. Knutson v. Jackson* (1957), 249 Minn. 246, 82 N.W.2d 234; *State v. Dugan* (1973), 297 Minn. 374, 211 N.W.2d 876; *State v. Dehler* (1960), 257 Minn. 549, 102 N.W.2d 696; Note, *Reference for Prosecution in Juvenile Court Proceedings* (1969), 54 Minn. L. Rev. 389, 394, n. 24; Schornhorst, *The*

In view of this statutory provision, we hold that Ritter could properly raise in the habeas corpus action the issue whether he was a child under Minnesota juvenile law at the time of the alleged offense and the issue whether a reference for prosecution as an adult was made. These are not matters going to guilt or innocence, and so beyond the purview of extradition habeas corpus. Sec. 976.03 (20), Stats. They go to the existence of a criminal charge under the law of the demanding state, which is a prerequisite to a valid extradition. *Hyatt v. Corkran* (1903), 188 U. S. 691, 709, 23 Sup. Ct. 456, 47 L. Ed. 657.

Ritter did offer uncontroverted proof that he was under the age of eighteen at the time of the alleged offense, and therefore a "child" under Minnesota law. Sec. 260.015, subd. 1, Minn. Stats. Annot. The circuit court could take judicial notice of sec. 260.215, subd. 1, Minn. Stats. Annot., which we have set out above, and it was proper for the circuit court to determine whether a reference for prosecution had been made. If it appeared that there had been no reference for prosecution, an order discharging the petitioner from custody would have been required.

However, Ritter's petition in circuit court disclosed that an order referring his case to a prosecuting authority had been entered by the Houston County Juvenile Court, but alleged that due to defects in the notice he received of proceedings in which the order was entered, the order for reference was void. Copies of the order for hearing and petition which together constituted the allegedly defective notice were appended to Ritter's habeas corpus petition, and copies of the findings and the order for reference issued in Minnesota were pro-

*Waiver of Juvenile Court Jurisdiction: Kent Revisited,* 43 Ind. L.J. 583, 606 (1968); Pirsig, *Juvenile Delinquency & Crime: Achievements of the 1959 Minnesota Legislature,* 44 Minn. L. Rev. 363, 407 (1960).

vided to the circuit court as well. The documents mailed to Ritter by way of notice set forth the nature of the charge against him, informed him that a hearing would be had on whether he should be referred to a prosecuting authority, and informed him of the time and place of the hearing. It is undisputed that Ritter and his parents received these documents in advance of the hearing.[4] Nevertheless, the circuit court examined the papers before it in the light of its interpretation of Minnesota law and concluded that the order referring Ritter for adult prosecution was void.

Ritter's position in the circuit court and in this court rests on noncompliance with Minnesota statutes and rules of court regulating service of notice on nonresident juveniles and on the constitutional ground of due process. The tenor of his argument is that the defects in notice prevented the Minnesota court from acquiring jurisdiction to refer him to prosecuting authority and that the act of a court without jurisdiction does not constitute due process of law.

It is undisputed that the documents Ritter received did fail in some respects to comply with Minnesota law. Ritter appeared specially in the Minnesota juvenile proceedings by counsel and explicitly raised the questions of jurisdiction and adequacy of notice. The Minnesota juvenile court considered these contentions in light of the circumstances, which included execution of the aforementioned promise to appear, ruled on them adversely

---

[4] We note that recent cases have recognized the "critically important" nature of proceedings to transfer an individual from the juvenile system to prosecution as an adult. These cases have prescribed minimal rights that must be accorded the juvenile in such proceedings. *See: Mikulovsky v. State* (1972), 54 Wis.2d 699, 196 N.W.2d 748; Buss, *Waiver of Jurisdiction in Wisconsin Juvenile Courts*, 1968 Wis. L. Rev. 551; Schornhorst, *supra*, 43 Ind. L.J. 583, at 585–588. An extensive collection of authorities is found in *United States ex rel. Turner v. Rundle* (3d Cir. 1971), 438 Fed.2d 839, 841, 842.

to Ritter and referred him for prosecution as an adult. Thus in discharging Ritter from custody the Wisconsin circuit court substituted its judgment on the questions raised for that of the Minnesota juvenile court.

The traditional area of inquiry in extradition habeas corpus cases is defined in general terms by the four categories previously mentioned: whether the governor's warrant and supporting documents are in order, whether a crime is substantially charged, and the identity and fugitive status of the person whose extradition is sought. The area so defined provides the starting point for determining whether a matter sought to be raised in a particular case should be considered by the habeas court. Within these general categories, however, questions may arise as to how far the inquiry in the asylum state should be pressed.

■ The proper scope of a hearing on extradition habeas corpus involves the conflict of two basic principles of American law: (1) The political philosophy of federalism, namely, the proper relationship between the judicial processes of sister states; and (2) The securing for individuals of the constitutional rights guaranteed by the fourteenth amendment. These two principles must be accommodated in the habeas corpus hearing. Note, *Extradition Habeas Corpus,* 74 Yale L.J. 78 (1964); Horowitz and Steinberg, *The Fourteenth Amendment—Its Newly Recognized Impact on the "Scope" of Habeas Corpus in Extradition,* 23 So. Cal. L. Rev. 441 (1950). *Cf. People of State of Michigan v. Koenig* (1974), 300 Minn. 432, 220 N. W. 2d 825.

■ This court has often stated that the final responsibility for the legality of procedures in the demanding state lies with the courts of the demanding state. *State ex rel. Lutchin v. Outagamie County Court* (1969), 42 Wis.2d 78, 85, 165 N.W.2d 593. The justifications generally given for allowing the demanding state to resolve questions of irregularities of procedure are that it is

presumed that an extradited person will be fairly treated in the demanding state;[5] that there is a need for an efficient, speedy resolution of extradition; that comity requires that the extradited person test the laws of the demanding state in that state; and that it is burdensome and productive of error for the asylum state to examine critically the laws of a sister state with whose jurisprudence and procedure it has only a general acquaintance. *Biddinger v. Commissioner of Police* (1917), 245 U. S. 128, 38 Sup. Ct. 41, 62 L. Ed. 193; *Pierce v. Creecy* (1908), 210 U.S. 387, 28 Sup. Ct. 714, 52 L. Ed. 1113.

██ ██ On the other hand this court has also declared that the statutory extradition process is a right conferred upon the asylum state whereby as a sovereign it may assert its right to protect its own citizens or persons within its boundaries from unjust criminal actions. *State ex rel. Niederer v. Cady* (1976), 72 Wis.2d 311, 240 N.W.2d 626. This court has said:

". . . We think there is no justice in saying to a person in Wisconsin subject to our laws and entitled to the protection of his rights, that he may be extradited but may contest the legality of his extradition *ex post facto.* Nor is it just to put the accused to the expense, inconvenience and jeopardy involved in a defense in the demanding state when this preliminary prerequisite to extradition can be determined here." *State ex rel. Foster v. Uttech, supra,* p. 675.

This court has permitted trial courts in habeas corpus proceedings to "examine into *constitutional questions* affecting the legality of the arrest in this state for extradition *at least where constitutional standards are shown not to have been complied with on the face of the documents.*" (Emphasis added.) *State ex rel. Foster v. Uttech, supra,* 31 Wis. 2d 664, at page 671. In a recent

[5] *Cf. Comm. ex rel. Mattox v. Superintendent* (1943), 152 Pa. Super. 167, 31 Atl.2d 576; *Johnson v. Dye* (3d Cir. 1949), 175 Fed.2d 250, rev'd on procedural grounds, 338 U.S. 864, 70 Sup. Ct. 146, 94 L. Ed. 530.

opinion we characterized the *Uttech* case as a limited exception to the rule that "whether correct constitutional procedures had been followed by the demanding state in obtaining the arrest of the defendant was an issue to be raised in the demanding state, not the asylum state." *State v. Hughes* (1975), 68 Wis. 2d 662, 670, 229 N.W.2d 655.

We do not think this case falls into the limited exception created by the *Uttech* case. In this case we began by limiting our review of the legality of the arrest to one of the four questions generally accepted as within the scope of review on habeas corpus. In dealing with the question of whether a crime was charged we then went beyond the face of the documents and allowed judicial notice of statutes and evidence on a simple factual issue—age. It was then determined that final resolution of the issue of whether a crime was charged turned on whether there was a jurisdictional defect in the Minnesota procedures by which Ritter was referred for adult prosecution. Such a defect was not apparent on the face of the papers. Nor do the papers disclose on their face any other constitutional infirmity in the proceedings against Ritter. *Uttech* therefore does not apply.

The accommodation between the principles of federalism and the protection of the individual must be made in each case upon a balancing of the considerations enunciated earlier as the justifications for allowing the decision to be made by the demanding or asylum state. Perhaps the test to be applied in the asylum state can be stated in the following practical terms: Can the defects in the procedures of the demanding state be more easily raised and adequately handled in the demanding state after the accused is returned or is the decision one which the asylum state can make with comparative ease and with expertise equal to that of the demanding state, thus saving the accused the expense, inconvenience and

jeopardy involved in litigating the issue in the demanding state?

Here, the face of the Minnesota juvenile court documents does not show that the proceedings were void;[6] their validity depends on the conduct of Ritter, his father, or his attorney and on construction of Minnesota law.[7] Neither the trial court nor this court has before it the relevant facts, the full transcript of the Minnesota juvenile court hearings, or adequate knowledge of the Minnesota law bearing on the issues. Under these circumstances the issue of whether the Minnesota proceedings were proper to charge a crime is best left to the demanding state. The trial court's attempt to review and pass upon the procedures followed in the Minnesota juvenile court exceeded the scope of review which is to be afforded at an extradition hearing. We conclude that the trial court should have quashed the writ.

*By the Court.*—Order reversed and cause remanded with directions to quash the writ and for further proceedings consistent with this opinion.

---

[6] If it had been clear on the face of the documents that the proceedings were void or if the United States Supreme Court or the Supreme Court of Minnesota had held the Minnesota referral statutes or the statute Ritter allegedly violated void, then the asylum state could have granted the writ of habeas corpus because the information or affidavit would have failed to charge the person with having committed a crime under the law of the demanding state. *In re Cooper* (1960), 53 Cal.2d 772, 3 Cal. Rptr. 140, 349 Pac.2d 956.

[7] Many courts have recognized that although the requisition and papers accompanying it must substantially charge a crime, the asylum state should not test the constitutionality of a statute charging the crime in cases where the demanding state may construe its statute and apply it in a manner which is constitutional. *Denton v. Cronin* (Colo. 1974), 529 Pac.2d 644.

In *Synder v. State* (1973), 95 Idaho 643, 516 Pac.2d 700, the juvenile was not granted a hearing in Colorado, the demanding state, to determine whether the accused should be charged as an

adult. Colorado statutes did not require a hearing. The Idaho Supreme Court believed that the case fell within the broad principle that the asylum state should not review the constitutionality of statutes of the demanding state and held that the petitioner should assert his due process defense in the demanding state.