STATE EX REL. JACKSON, Petitioner-Appellant, v. FROELICH, Respondent.

*No. 76–325. Argued March 30, 1977.—Decided May 3, 1977.*
·(Also reported in 253 N. W. 2d 69.)

300

For the appellant there was a brief and oral argument by *Charles Bennett Vetzner*, postconviction defense project of Madison.

For the respondent the cause was argued by *Michael R. Klos*, assistant attorney general, with whom on the brief was *Bronson C. La Follette*, attorney general.

ROBERT W. HANSEN, J.   The petitioner challenges the constitutionality of extradition proceedings conducted pursuant to the Uniform Criminal Extradition Act, adopted in sec. 976.03, Stats., and challenges the Wisconsin governor's extradition warrant as being issued under provisions of the extradition act which allegedly are not applicable to this petitioner.

Petitioner's initial and primary challenge is to the constitutional validity of the procedure set forth in the Uniform Criminal Extradition Act. Under this act, adopted in forty-seven states and several territories, once a request is received by the governor of the asylum state, here Wisconsin, the governor may but is not required to investigate the case.[1]

[1] Sec. 976.03(4), Stats., providing: "When a demand shall be made upon the governor of this state by the executive authority of another state for the surrender of a person so charged with crime, the governor may call upon the attorney general or any prosecuting officer in this state to investigate or assist in investigating the demand, and to report to him the situation and

If the governor approves the request for extradition from the demanding state, an extradition warrant is issued and the accused is brought before a judge who informs the individual whose extradition is sought of his right to contest the legality of the extradition.[2] If the prisoner or his counsel contests the legality of detention and extradition, the judge fixes a reasonable time within which an application for habeas corpus, the legal tool for challenging extradition, may be made.[3] The scope of the court's inquiry in such an extradition habeas corpus proceeding has recently been delineated by this court.[4]

The original source of authority for interstate extradition is in the United States Constitution.[5] Petitioner contends that the procedure provided in the Uniform Criminal Extradition Act does not meet the due process

---

circumstances of the person so demanded, and whether he ought to be surrendered."

[2] Sec. 976.03(10), Stats.

[3] *Id.*

[4] *State v. Ritter*, 74 Wis.2d 227, 231, 246 N.W.2d 552 (1976), this court holding: ". . . [A] court in a habeas corpus proceeding testing the legality of the detention may examine into the following four questions:

"(1) Are the extradition papers in order and properly authenticated?

"(2) Was a crime substantially charged under the law of the demanding state?

"(3) Is the petitioner the person named in the extradition papers (identity)?

"(4) Was the petitioner present in the demanding state at the time of the alleged offense (fugitive status)?" Citing *Commonwealth ex rel. McGowan v. Aytch*, 233 Pa. Super. 66, 334 A.2d 750 (1975). Note, *Extradition Habeas Corpus*, 74 Yale L.J. 78 (1964).

[5] Art. IV, sec. 2, cl. 2, U.S. Const., providing: "A person charged in any state with treason, felony, or other crime, who shall flee from justice, and be found in another state, shall, on demand of the executive authority of the state from which he fled, be delivered up, to be removed to the state having jurisdiction of the crime."

or fair play requirement of the federal constitution.[6] The claim is that one subject to extradition is entitled to notice of the initiation of the extradition proceeding. This is not a claim that such person is entitled, constitutionally or otherwise, to a hearing before the governor of the asylum state. Rather it is a claim that such person is entitled to notice that a demand has been made upon the governor of an asylum state for extradition. Since the governor may or may not make an investigation as to such demand, petitioner's contention is that the individual involved must be given notice so that he can suggest to the governor reasons why an investigation should be made.

Encouragement for the claim of right to notice at the commencement of extradition proceedings is found by petitioner and his counsel in this court's decision in *State ex rel. Garner v. Gray*.[7] There the Uniform Detainer Act, as adopted in sec. 976.05, Stats., was challenged on constitutional grounds. The claim in *Garner* was that while the uniform extradition statute provided a petitioner the right to be advised by a court of record of his right to challenge extradition proceedings, the uniform detainer statute, sec. 976.05, contained no similar provision.

Upholding the challenge, a majority of this court found ". . . very real and important differences in the statutory rights to be accorded a sought-after prisoner depending upon which act is utilized by out-of-state author-

---

[6] U.S. Const. Amend. XIV, sec. 1, providing in material part: ". . . No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." *Cf. Michigan v. Tucker*, 417 U.S. 433, 447 (1974) (Law does not require that a defendant receive a perfect trial, only a fair one.)

[7] 55 Wis. 2d 574, 201 N.W.2d 163 (1972).

ities."[8] The court found no rational basis for the distinction. In *Garner,* this court went on to hold: "A hearing procedure similar to that provided for in the Uniform Criminal Extradition Act would serve to cure both the due-process and equal-protection defects of the Uniform Detainer Act."[9]

While it is evident this court, in *Garner,* found that the procedure followed in the extradition act met due process requirements, petitioner does not view *Garner* as making the uniform extradition procedure the model or standard to which the Uniform Detainer Act procedure was constitutionally required to be altered and fitted. Instead, petitioner argues that a right given the subject of the proceeding in either act must, on equal protection grounds, be accorded one subject to a proceeding under the other act. What is in either act, the contention apparently is, must be in the other.

The extradition act gives no right to hearing before the governor or right to petition the governor for such hearing.[10] The detainer act, on the other hand, provides that ". . . there shall be a period of 30 days after receipt by the appropriate authorities before the request is honored, within which period the governor of the sending state may disapprove the request for temporary custody or availability, either upon his own motion or upon motion of the prisoner."[11] While not claiming a right to a hearing or an investigation by the governor in an extradi-

---

[8] *Id.* at 587, this court noting: "The prisoner who is sought under the Uniform Criminal Extradition Act is accorded the rights to be informed of the custody request and his rights by a judge of a court of record. The prisoner who happens to be sought under the Uniform Detainer Act does not have this right to a judicial notification of the detainer and rights under the act."

[9] *Id.* at 588.

[10] *See:* Sec. 976.03, Stats., particularly 976.03(4).

[11] Sec. 976.05, art. IV(a), Stats.

tion proceeding, the petitioner is demanding similar notice and, inferentially, a similar right to petition or, at the least, to request an investigation by the governor of the asylum state before an extradition warrant can be issued by such governor.

The issue before this court is not whether, as a matter of sound public policy, there ought to be in the Uniform Criminal Extradition Act a requirement for a period of delay before the governor can issue an extradition warrant, with the individual involved to have the right to petition the governor for an investigation. That is for the legislature to consider and determine. The issue rather is whether there is a constitutional imperative that, because such waiting period and right to petition is in the Uniform Detainer Act, it must be in the extradition act to make it constitutionally antiseptic.

A uniformity of court decisions have held that there is no right to a hearing before the governor in extradition proceedings under the uniform act.[12] What *is* provided is a prompt hearing, after issuance of the governor's warrant, in a court of record in which both the rights and the opportunity to challenge the extradition are given to the person whose extradition is sought.

One state supreme court, in noting that the extradition act proceedings do not provide for any hearing before issuing the governor's warrant, has held: "The act does not violate any right of due process of the appellant. It is only necessary that he be given an opportunity to be heard as to his rights at some stage in the proceedings.

---

[12] *See: Pettibone v. Nichols*, 203 U.S. 192, 204 (1906); *Munsey v. Clough*, 196 U.S. 364, 372 (1905); *In re Murphy*, 72 N.E.2d 413, 415 (Sup. Jud. Ct. Mass. 1947); *Horne v. Wilson*, 316 F. Supp. 247, 250 (E.D. Tenn. 1970); *Andrews v. State*, 169 N.E.2d 193, 194 (Sup. Ct. Ind. 1960).

The proceeding now before us on appeal has provided the opportunity."[13]

What is true of the right to hearing is equally true as to the right of notice or right to petition. It is constitutionally sufficient that rights are explained and the opportunity to challenge given in extradition proceedings immediately after the issuance of the governor's warrant.

While it is not constitutionally required that every procedural step prescribed in either the detainer act or the extradition act must be in the other, it is to be kept in mind that there are differences in the situation and procedures involved other than the one here challenged. Under the detainer act, requisition for custody is made, not to the governor, but directly to the prison authorities in the demanding state, provided that ". . . the court having jurisdiction of such indictment, information or complaint has duly approved, recorded and transmitted the request. . . ."[14] It is in this connection, and the same subsection of the statute, that provision is made for a petitioner to move the governor to disapprove the request for temporary custody or availability.

With the extradition act requiring that a requisition for extradition be addressed to the governor of the asylum state who may or may not investigate such requisition, it is clear that the detainer act does no more than to permit petitioning the governor to exercise the same discretion in the detainer situation which the governor is already required to exercise by statute under the uniform act in extradition proceedings. Moreover, certain prerequisites must be met by the demanding papers before the governor issues an extradition warrant. Such papers must recite that the accused was

[13] *Andrews v. State, supra,* n. 12, 169 N.E.2d at 194.
[14] Sec. 976.05, art. IV (a), Stats.

present in the demanding state at the time of commission of the crime and that he thereafter fled. (The demand must be accompanied by a copy of an indictment or a verified information or judgment.) The copy of the above documents must be verified by the governor of the demanding state.

The fact that a person subject to extradition proceedings is informed of his rights and given the opportunity to challenge the legality of his extradition at a judicial hearing, immediately after the warrant is issued by the governor, is sufficient to meet constitutional requirements as to due process and equal protection. The initial role of the governor, as one state court has held, "becomes merely a ministerial one."[15] Clearly, the governor's role is a limited one. There is no constitutional mandate to expand it to be the equivalent of the judicial informing of rights and affording of an opportunity to challenge extradition that is provided for, and promptly so, in the uniform extradition act. We find no constitutional infirmity in the Uniform Criminal Extradition Act, sec. 976.03, Stats., and reject the challenge of this petitioner to its constitutionality.

Petitioner's second and separate challenge refers to petitioner's fugitive status as stated in the extradition warrant issued by the governor of Wisconsin. That war-

[15] *Matter of Lucas*, 136 N.J. Super. 24, 343 A.2d 845, 850 (1975). *See also: Roberts v. Reilly*, 116 U.S. 80 (1885); Note, *Indigents' Right to Appointed Counsel in Interstate Extradition Proceedings*, 28 Stan. L. Rev. 1039, 1045, n. 35 (1976), stating: ". . . when the governor satisfies himself and issues a warrant, it is immaterial that the proof 'was not as full as might properly have been required, or because it was so meagre as, perhaps, to admit of a conclusion different from that reached by him.' " Citing *Ex parte Reggel*, 114 U.S. 642, 652, 653 (1885). *Accord, Glavin v. Warden, State Prison*, 163 Conn. 394, 311 A.2d 86, 89 (1972).

rant, in its first "Whereas" clause, describes petitioner as "a fugitive from justice."[16] In its second "Whereas" clause, that warrant describes petitioner as an "alleged fugitive" charged with "having escaped from custody."

Petitioner contends that the second "Whereas" reference erroneously describes him as having escaped from custody when in fact he was in custody when he was returned from Illinois following conviction for murder and aggravated battery, to the Wisconsin reformatory to complete his sentence there.

What we deal with here is what this court has termed the "fugitive status" of the person sought to be extradited.[17] As to this petitioner, that status was established when he originally left the state of Illinois. When the state of Illinois sought this petitioner for the purpose of having him stand trial for murder and aggravated battery, he was located in prison in Wisconsin. His first departure from Illinois was voluntary. That he was later temporarily delivered by Wisconsin prison authorities to Illinois to stand trial and then returned to Wisconsin to finish his term of incarceration in this state does not change his status. That derives from his original departure, not his round trip excursion to stand trial later on.

[16] *See:* Extradition Arrest Warrant, issued by Wisconsin Governor Patrick J. Lucey, stating, in clause referred to: *"Whereas,* A demand has been made upon the Governor of the State of Wisconsin by the Executive authority of the State of Illinois, for the delivery over of ALBERT JACKSON aka CROW JACKSON, now alleged to be within the jurisdiction of this State, as a fugitive from justice of said State, as defined by the Constitution and Laws of the United States."

[17] *State v. Ritter, supra,* n. 4, at 231, this court, listing four questions to be examined by a court in an extradition habeas corpus proceeding, including, "(4) Was the petitioner present in the demanding state at the time of the alleged offense? (*fugitive status*) ?" [Emphasis supplied.]

■

Even if we were to deal with only his second departure under the detainer agreement following trial, this petitioner would still be subject to extradition. The general rule is that the mode or manner of a person's departure from the state does not affect his status as a fugitive from justice ". . . so the fact that a person's departure was involuntary or under legal compulsion will not, under most authorities, preclude his extradition as a fugitive from justice."[18]

■

As one state supreme court has said in a situation similar to that before us, all that is necessary to constitute a person a fugitive from justice is " '(1) that, being within a state, he there committed a crime against its laws, and (2) when required to answer its criminal process, he has left its jurisdiction, and is found in the territory of another state.' "[19] We agree with the majority

[18] 35 C.J.S., *Extradition*, sec. 10, page 395. *See also:* Annot., 13 A.L.R. 415 (1921), stating: "The decided weight of authority is to the effect that the mission, motive, or purpose inducing a person accused of being a fugitive from justice to leave the demanding state is immaterial, and that the courts of an asylum state will not consider such elements in an extradition proceeding. . . ."

[19] *Commonwealth v. Haas*, 428 Pa. 167, 236 A.2d 810, 813 (1968), the court there adding: " 'The sole purpose of this statute, and of the constitutional provision which it was designed to carry into effect, was to secure the return of persons who had committed crime within one state, and had left it before answering the demands of justice.' " Citing and quoting *State ex rel. Shapiro v. Wall*, 187 Minn. 246, 244 N.W. 811, 812 (1932). The great weight of authority is in line with this Pennsylvania case. *See: Evans v. Rosenberger*, 181 N.W.2d 152, 155 (Sup. Ct. Iowa 1970); *Application of Butler*, 346 P.2d 348, 350–352 (Okla. Cr. App. 1959); *Application of Fedder*, 299 P.2d 881, 885–886 (Cal. App. 1956); *Hedge v. Campbell*, 389 P.2d 834, 838 (Kan. Sup. Ct. 1964); *Woody v. State*, 215 Kan. 353, 524 P.2d 1150, 1159 (1974); *State v. West*, 79 N.J. Super. 379, 191 A.2d 758, 763 (1963); *Golla v. State*, 159 A.2d 585, 587 (Del. Sup. Ct. 1960), cert. de-

rule that fugitive status attaches to anyone who has committed a crime within a state and, when sought to be subjected to its criminal process to answer for his offense, has left its jurisdiction and is found in another jurisdiction.

Petitioner additionally contends that the reference to "escape from custody" in the Wisconsin governor's warrant constitutes a violation of the statutory mandate that the governor's extradition warrant "must substantially recite the facts necessary to the validity of its issue."[20] The qualifying word as to this requirement is "substantially."

Throughout the Wisconsin governor's warrant the petitioner is termed an alleged "fugitive." The reference in the warrant to "escape from custody," in only one of the "Whereas" clauses, is a reference to accompanying papers from the Illinois governor. In reality petitioner was charged with murder and aggravated battery in Illinois. Since the scope of inquiry is the same, this claimed error in reference is not substaintial and here without consequence. Under the majority rule, above set forth and adopted, motives or manner of leaving a state are not material as to fugitive status, but, in the case before us, that fugitive status and its voluntary nature were established when this petitioner originally left the state of Illinois prior to his incarceration in this state and unaffected by his subsequent return from trial to Illinois.

Both petitioner's challenge to the constitutionality of the Uniform Criminal Extradition Act (sec. 976.03, Stats.) and his allegation that he is not a fugitive from justice under the act are rejected.

*By the Court.*—Order affirmed.

---

nied, 364 U.S. 841; *Hanford v. Grimes,* 219 Ga. 136, 132 S.E.2d 75, 76 (1963); *State ex rel. Martin v. Boos,* 85 S.D. 484, 186 N.W.2d 130, 131 (1971).

[20] Sec. 976.03(7), Stats.