STATE EX REL. Gerald GRAVES, Petitioner-Appellant,

v.

Edwin WILLIAMS, Sheriff of Adams County, Respondent.†

Court of Appeals

*No. 80–907. Submitted on briefs August 29, 1980.—*
*Decided September 4, 1980.*
(Also reported in 298 N.W.2d 392.)

For the petitioner-appellant the cause was submitted on the briefs of *David Niblack*, state public defender, and *Bryan J. Borman*, of Baraboo.

For the respondent the cause was submitted on the brief of *Bronson C. La Follette*, attorney general, and *Michael R. Klos*, assistant attorney general.

† Petition to review denied.

Before Gartzke, P.J., Bablitch, J. and Dykman, J.

BABLITCH, J. This appeal is from an order and judgment entered May 14, 1980, dismissing a petition for *habeas corpus*. The petitioner was arrested on an extradition warrant issued pursuant to the Uniform Criminal Extradition Act, sec. 976.03, Stats., on the request of the State of New York shortly after his release on parole from the federal penitentiary in Oxford, Wisconsin. He is being held in the Adams County jail pending this appeal, which has been expedited.

Subsequent to the petitioner's 1976 arrest in New York on charges of first degree robbery, he was released to federal officials on outstanding forgery charges. He pled guilty to the federal charges and was sentenced to two years in prison plus a three-year special probation consecutive to his prison term. Shortly after the federal sentence was imposed he was returned to New York, where he was convicted by a jury on the state charges. He was sentenced to serve from five to fifteen years in state prison, concurrent with the federal sentence. After he had served 29 months of his state sentence, the petitioner was again released to federal authorities and was incarcerated in a federal prison until his parole and arrest on the Wisconsin extradition warrant.

The central issue on appeal is whether a prisoner who is released on parole by federal authorities is subject to extradition by a state having an unsatisfied judgment of conviction against him under the uniform act. The petitioner also contends that New York waived its right to require his return to complete his state sentence by voluntarily relinquishing his custody to federal authorities so that he could serve his federal sentence prior to the state sentence. We hold against the petitioner on

each ground and affirm the order and judgment dismissing his petition.[1]

The state contends that the central issue on appeal is governed by this court's decision in *State ex rel. O'Connor v. Williams*, 95 Wis.2d 378, 383, 290 N.W.2d 533, 535 (Ct. App. 1980), where we said:

[W]e hold that a convict who is released on parole prior to the expiration of a sentence is subject to extradition by a demanding state having an unsatisfied criminal sentence against him, and that he is a "fugitive from justice" within the contemplation of the Uniform Extradition Act.

Although the language of the holding is broad enough to cover the instant case, the petitioner correctly points out that the precise issue raised in this case was not raised in *O'Connor*. The petitioner in that case conceded that a person against whom an unsatisfied judgment of conviction and sentence existed was a "fugitive from justice" within the meaning of the uniform act but argued that he would not become such a fugitive until the technical expiration of his federal sentence and completion of his parole. The petitioner in this case makes no such concession, but contends that the extradition act and the federal constitutional[2] and legislative[3] provi-

---

[1] Our decision on the central issue is dispositive of the third contention made by the appellant that the extradition papers are not in order on their face.

[2] Art. IV, sec. 2, cl. 2 of the United States Constitution provides:

A Person charged in any State with Treason, Felony, or other Crime, who shall flee from Justice, and be found in another State, shall on Demand of the executive Authority of the State from which he fled, be delivered up to be removed to the State having Jurisdiction of the Crime.

[3] The federal extradition statute, 18 U.S.C. sec. 3182, provides:

Whenever the executive authority of any State or Territory demands any person as a fugitive from justice, of the executive authority of any State, District or Territory to which such person has fled, and produces a copy of an indictment found or an affidavi

sions it was intended to supplement apply only to persons who are charged but not yet tried in the demanding state, and to persons who have escaped imprisonment in the demanding state or broken the terms of bail, probation or parole.

It is true that neither the Uniform Extradition Act nor the corresponding federal law make an express provision for the extradition of persons from an asylum state to a demanding state in which an unexpired sentence of imprisonment remains to be served. Section 976.03(2), Stats.,[4] provides that it is the duty of the governor to deliver to a demanding state "any person charged" with a crime in that state "who has fled from justice and is found in this state." Section 976.03(3)[5]

made before a magistrate of any State or Territory, charging the person demanded with having committed treason, felony, or other crime, certified as authentic by the governor or chief magistrate of the State or Territory from whence the person so charged has fled, the executive authority of the State, District or Territory to which such person has fled shall cause him to be arrested and secured, and notify the executive authority making such demand, or the agent of such authority appointed to receive the fugitive, and shall cause the fugitive to be delivered to such agent when he shall appear. If no such agent appears within thirty days from the time of the arrest, the prisoner may be discharged.

[4] Sec. 976.03(2), Stats., provides:

Subject to the qualifications of this section, and the provisions of the U. S. constitution controlling, and acts of congress in pursuance thereof, it is the duty of the governor of this state to have arrested and delivered up to the executive authority of any other state of the United States any person charged in that state with treason, felony or other crime, who has fled from justice and is found in this state.

[5] Sec. 976.03(3), Stats., provides in part:

No demand for the extradition of a person charged with crime in another state shall be recognized by the governor unless in writing alleging . . . that the accused was present in the demanding state at the time of the commission of the alleged crime, and that thereafter he fled from the state and accompanied by a copy of an indictment found or by an information supported by affidavit in the state having jurisdiction of the crime, or by a copy of an affi-

provides that no demand shall be recognized unless it is in writing and alleges that the accused "fled from the state," and unless it is also accompanied either by a copy of a charging document, or by a judgment of conviction or sentence "together with a statement by the executive authority of the demanding state that the person claimed has escaped from confinement or has broken the terms of his bail, probation or parole." Similarly, sec. 976.03(23), which governs the manner of applying for an extradition, is couched exclusively in terms of a person "charged with crime" and sought to be returned to the demanding state "for trial," and a person "who has been convicted . . . and has escaped from confinement" or violated conditions of release.

Despite the fact that these provisions refer expressly to only two categories of persons subject to extradition, however, the courts in the jurisdictions which have adopted the act have almost uniformly held that it also applies to persons who have an unexpired sentence in the demanding state, even if they have not literally "escaped" from that state's jurisdiction by deliberately fleeing from it. Some of these courts have rested the conclusion on a determination that a person remains "charged" within the meaning of the act, even after conviction, until the expiration of any sentence imposed.[6]

davit made before a magistrate there, together with a copy of any warrant which was issued thereon; or by a copy of a judgment of conviction or of a sentence imposed in execution thereof, together with a statement by the executive authority of the demanding state that the person claimed has escaped from confinement or has broken the terms of his bail, probation or parole.

[6] *See e.g., Wynsma v. Leach,* 189 Colo. 59, 536 P.2d 817, 819 (1975) ; *People ex rel. Brown v. Jackson,* 49 Ill.2d 209, 274 N.E.2d 17, 19 (1971); *Frazier v. Grimes,* 221 Ga. 375, 145 S.E.2d 39, 40 (1965) ; *Ex parte Burnett,* 78 Okla. Crim. App. 93, 144 P.2d 126, 127 (1943), quoting *Ex parte Foster,* 60 Okla. Crim. 50, 61 P.2d 37, 38 (1936) ; *State v. Remann,* 165 Wash. 40, 4 P.2d 866, 869, 78 A.L.R. 412 (1931). *See also Hughes v. Pflanz,* 138 Fed. 980 (6th Cir. 1905), and cases cited in 78 A.L.R. 412, 422, construing the

Others have held, more broadly, that regardless of the reasons the person sought to be extradited is outside the demanding state, so long as an unsatisfied sentence is outstanding such a person is a "fugitive from justice" within the meaning of the uniform act.[7] A similar logic could be employed to hold that one whose sentence has not been satisfied in a demanding state has "escaped" from the jurisdiction of that state if he is found in any other jurisdiction. *Gottfried v. Cronin*, 192 Colo. 25, 555 P.2d 969, 971–72 (1976), touched all three bases:

We have previously held the clause "any person charged with a crime" includes a person whose judgment of conviction remains unsatisfied . . . Moreover, the phrase "fled from justice" has generally been interpreted to cover individual who are merely absent from the state when they are sought to answer for a crime, irrespective of their manner of leaving the state. . . .

Furthermore, the extradition law is designed to prevent the successful escape of all persons accused of crime, whether convicted or not, and to secure their return to the state from which they fled for their due punishment. . . . Consequently, we have held that the extradition statutes should not be so narrowly construed as to enable offenders against the laws of a state to find permanent asylum in another state. . . .

In light of . . . the Act's purposes, we believe that [the counterpart of sec. 976.03 (3), Wis. Stats.] does not limit the extradition of an individual convicted of a crime to instances where he has "escaped from confinement or has broken the terms of his bail, probation, or parole." *Such language was only meant to be illustrative, but not exhaustive, of the occasions when a convicted person can be considered to have fled from the justice of another state.* [Emphasis supplied; citations omitted.]

word "charged" as used in the federal constitution and extradition statute to the same effect.

[7] *See e.g., Ingram v. Dodd*, 243 Ga. 788, 256 S.E.2d 778, 779 (1979); *Hedge v. Campbell*, 192 Kan. 623, 389 P.2d 834, 838–39 (1964); *Broyles v. Mount*, 197 Ga. 659, 30 S.E.2d 48, 49 (1944).

The petitioner complains that *Gottfried* and other cases reaching a similar conclusion[8] fail to give a rationale for departing from the "plain meaning" of the statutory language. He contends that state courts must interpret the Uniform Extradition Act consistently with federal law, (citing *Michigan v. Doran,* 439 U.S. 282 (1978)).

*Doran* reiterated the long-standing principle that the courts of an asylum state are bound by art. IV, sec. 2 of the federal constitution, and by the federal legislation implementing it.[9] *Doran* does not, however, support the petitioner's position that the uniform act must be narrowly limited to those classes of fugitives from justice specifically mentioned in the statute ànd that it cannot be applied to persons such as the petitioner. Although the court recognized that the extradition clause "was intended to enable each state to bring offenders to trial as swiftly as possible in the state where the alleged offense was committed," 439 U.S. at 287, it also recognized a far broader purpose underlying the constitutional provision:

The purpose of the Clause was *to preclude any state from becoming a sanctuary for fugitives from justice of another state* and thus "balkanize" the administration of criminal justice among the several states. It articulated, in mandatory language, the concepts of comity and full faith and credit, found in the immediately preceding clause of Art. IV. The Extradition Clause, like the Commerce Clause, served important national objectives of a newly developing country striving to foster national unity. . . . *In the administration of justice, no less than in trade and commerce, national unity was thought to be served by deemphasizing state lines for certain purposes, without impinging on essen-*

---

[8] *In re Simmons,* 54 Mich. App. 112, 220 N.W.2d 311 (1974); *Commonwealth v. Price,* 405 Pa. 384, 175 A.2d 852 (1961).

[9] *Accord, State v. Ritter,* 74 Wis.2d 227, 230–31, 246 N.W.2d 552, 554 (1976); sec. 976.03(2), Stats.

*tial state autonomy.* 439 U.S. at 287–88. [Emphasis supplied.] [Citations omitted.]

The principles of comity and national unity in the administration of criminal justice would hardly be benefitted if each state were to insist that its prisoners serve their full sentences before being released to other jurisdictions in which they are accused of crimes. This would doubtless be the consequence of adopting the petitioner's literal reading of the act, since under that reading convicted criminals would be immunized from extradition to a demanding state which had deferred execution of a sentence and yielded jurisdiction over them for any reason. Among the possible reasons for yielding jurisdiction are a prisoner's own interests in obtaining a speedy trial in another jurisdiction, or in serving a concurrent sentence in a facility equipped to offer training or other benefits not available in the yielding state, as well as the other jurisdiction's interest in completing prosecution with fresh evidence.

We do not find in *Doran,* or in the other federal cases cited by the petitioner, support for his contention that the uniform act must be literally, narrowly construed in order to comport with federal law. To the contrary, the federal courts have consistently taken the opposite approach. *Matter of Strauss,* 197 U.S. 324 (1905), refused to apply a "restrictive interpretation" to the word "charged" in the constitutional provision, pointing out that ordinarily words in the constitution "do not receive a narrow, contracted meaning, but are presumed to have been used in a broad sense, with a view of covering all contingencies." 197 U.S. at 330. *Biddinger v. Commissioner of Police,* 245 U.S. 128, 133 (1917), also approved a liberal construction of the federal extradition laws "to effect their important purpose." Although both those cases dealt with persons who had been charged but not

convicted in the demanding jurisdiction, the "purpose" of the law has been far more broadly stated.

In *Appleyard v. Massachusetts,* 203 U.S. 222, 227–28 (1906), the court stated:

The constitutional provision relating to fugitives from justice, as the history of its adoption will show, is in the nature of a treaty stipulation entered into for the purpose of securing a prompt and efficient administration of the criminal laws of the several States,—an object of the first concern to the people of the entire country, and which each state is bound, in fidelity to the Constitution, to recognize. A faithful, vigorous enforcement of that stipulation is vital to the harmony and welfare of the States. And while a State should take care, within the limits of the law, that the rights of its people are protected against illegal action, the judicial authorities of the Union should equally take care that the provisions of the Constitution be not so narrowly interpreted as to enable offenders against the laws of a State to find a permanent asylum in the territory of another State.

*Appleyard* also quoted with approval from a New Jersey court's definition of a fugitive from justice as one who "commits a crime and withdraws himself from such jurisdiction *without waiting to abide the consequences of such act. . . ."* 203 U.S. at 231, quoting *In Re Voorhees,* 32 N.J.L. 141, 150 (1867). [Emphasis supplied.] *See also Roberts v. Reilly,* 116 U.S. 80, 97 (1885).

Under *Doran,* one of the determinations to be made by courts in the asylum state in *habeas corpus* proceedings challenging extradition is "whether the petitioner is a fugitive." 439 U.S. at 289. *Accord, State v. Ritter,* 74 Wis.2d 227, 231, 246 N.W.2d 552, 555 (1976) ; *State ex rel. Jackson v. Froelich,* 77 Wis.2d 299, 310, n. 17, 253 N.W.2d 69, 74, n. 17 (1977), citing *Ritter,* 74 Wis.2d at 231, 246 N.W.2d at 555. In *United States v. Matus,* 127 F. Supp. 282, 285 (D. Conn. 1954), *affirmed* 218 F.2d

466 (1954), the federal district court held that a person who had left the demanding state after a conditional pardon was subject to extradition from another state after the pardon was revoked on the ground that "mere presence in another state makes one a fugitive if charges *(including an unexpired sentence)* are pending in the demanding state." [Emphasis supplied.] That holding is consistent with the Supreme Court's definition of "fugitive from justice" in *Appleyard,* 203 U.S. at 227, and has been adopted by the Wisconsin Supreme Court in *Froelich,* 77 Wis.2d at 312, 253 N.W.2d at 75.

Although *Froelich* did not specifically address the issue of statutory construction raised by the petitioner on this appeal, that case also involved the extradition of a person facing an unexpired sentence in the demanding state, and who was not then present in Wisconsin because he had "escaped from confinement" in the literal meaning of that term. His extradition was ordered nonetheless.

It would be inconsistent with *Froelich,* with the great weight of authority in other states which have considered the question under the uniform act, and with the logic underlying the United States Supreme Court's interpretation of the federal law to adopt the narrow view of the act urged by the petitioner. By its terms the act requires that it be so construed as to effect uniformity in the states which have enacted it.[10] We therefore hold that the act authorizes the extradition of a person in this state who faces an unexpired sentence rather than a "charge" in a demanding state, whether or not he has literally "escaped from confinement" in that jurisdiction.

The petitioner's contention that New York waived or exhausted its right to demand his return by yielding his custody to federal authorities is similarly against the

---

[10] Sec. 976.03(30), Stats.

great weight of authority in other jurisdictions, both state and federal.[11] He relies on *Strewl v. McGrath,* 191 F.2d 347 (D.C. 1951), and *Ex parte Youstler,* 40 Okla. Crim. 273, 268 P. 323 (1928). In *Strewl* the federal court stated that "the sentence imposed by the federal court does not begin to run until the state has *exhausted its demands* against him and yields him to the federal government." 191 F.2d at 348. *Youstler* stated that Oklahoma's yielding of jurisdiction over an individual to another state "was a waiver of the right of this state to return the petitioner to his state." 40 Okla. Crim. at 276.

We do not read *Strewl,* 191 F.2d 347, as determining when a state sentence has expired or whether a state has lost, forfeited, or waived its right to demand the return of a prisoner under the extradition laws. The expiration of a state sentence is a matter of state law. The language relied on by the petitioner is taken out of context from a case where a prisoner had first served a state sentence after being convicted of both state and federal offenses, and sought credit against his federal sentence for time spent in state prison. The holding is limited to a determination of when, for federal purposes the prisoner's federal sentence began. It offers no support for the petitioner's position.

[11] *See, e.g., State v. Knapp,* 123 Ariz. 402, 599 P.2d 855 (1979); *Gottfried v. Cronin,* 192 Colo. 25, 555 P.2d 969 (1976); *Williams v. Dept. of Corrections,* 438 F.2d 78 (9th Cir. 1971); *Bullock v. State of Mississippi,* 404 F.2d 75 (5th Cir. 1968); *Commonwealth v. Haas,* 428 Pa. 167, 236 A.2d 810 (1968); *Derengowski v. U. S. Marshal, Minneapolis Office, Minn. Div.,* 377 F.2d 223 (8th Cir. 1967), *cert. den.* 389 U.S. 884 (1967); *Parsons v. Grimes,* 220 Ga. 231, 138 S.E.2d 306 (1964); *Heston v. Green,* 174 Ohio St. 291, 189 N.E.2d 86 (1963) *cert. den.* 374 U.S. 822 (1963); *Guerrieri v. Maxwell,* 174 Ohio St. 40, 186 N.E.2d 614 (1962); *United States v. Matus,* 127 F. Supp. 282 (1954), *affirmed* 218 F.2d 466 (1954); *King v. Mount,* 196 Ga. 461, 26 S.E.2d 419 (1943).

The Oklahoma court's statement in *Youstler* has accurately been referred to as "clearly obiter," *King v. Mount,* 196 Ga. 461, 26 S.E.2d 419 (1943). Some twenty years after *Youstler* was written, Oklahoma adopted the uniform act[12] which provides that the transfer of prisoners between states shall not be deemed to be a waiver of jurisdiction "for the purpose of trial, sentence or punishment." Sec. 976.03(28), Stats. Other cases which have employed an automatic waiver rule, such as *In re Whittington,* 34 Cal. App. 344, 167 P. 404 (1917), and *Jones v. Rayborn,* 346 S.W.2d 743 (Ky. 1961), have been disapproved by subsequent cases in those jurisdictions. *In re Patterson,* 64 Cal.2d 357, 49 Cal. Rptr. 801, 411 P.2d 897 (1966) ; *Crady v. Cranfill,* 371 S.W.2d 640 (Ky. 1963).

The almost universal view of the state and federal courts which have addressed this issue is that no waiver of jurisdiction will be found unless waiver was "manifestly intended" by the demanding state at the time it yielded to another sovereignty.[13] No such waiver being apparent from the record before us, the trial court correctly denied the writ for *habeas corpus.*

*By the Court.*—Judgment and order affirmed.

---

[12] 11 U.L.A. *Crim. Law and Proc.* at 51 (1974).

[13] *Gottfried,* 555 P.2d at 973, n. 11, *supra.*